## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BECKLEY DIVISION

**RAYCO SAUNDERS,**

     **Plaintiff,**

**vs.**                                                    **CIVIL ACTION NO. 5:20-CV-00221**

**RALEIGH COUNTY,** *ET AL.,*

     **Defendants.**

### PROPOSED FINDINGS AND RECOMMENDATION

Pending before the Court are the following motions: Defendant the City of Beckley's ***Motion to Dismiss in Lieu of Answer***, ***Amended Motion to Dismiss in Lieu of Answer***, and supporting ***Memorandum of Law*** (ECF Nos. 35, 41, 36); Defendants the Southern Regional Jail, Scott E. Johnson, Esq., The Honorable Andrew[1] Dimlich, The Honorable Tomi S. Peck, and The Honorable Charles R. Humphrey's ***Motion to Dismiss*** and ***Memorandum in Support*** (ECF Nos. 38, 39); Defendants Sgt. T.A. Bowers and Cpl. D.R. White's ***Motion to Dismiss*** and ***Memorandum in Support*** (ECF Nos. 44, 49); and Defendants Raleigh County, Kristen Keller and Brian Parsons's ***Motion to Dismiss in Lieu of an Answer*** and supporting ***Memorandum of Law*** (ECF Nos. 46, 47).

By Standing Order entered on March 27, 2020, this matter was referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and a recommendation for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). (ECF No. 29)

---

[1] The undersigned notes that Plaintiff has named The Honorable "Adam" Dimlich as a Defendant, and that the responsive pleadings herein also refer to this Defendant as "Adam" Dimlich, however, Judge Dimlich's name is actually "Andrew", therefore, the undersigned refers to him throughout this proposed recommendation for disposition by his proper name.

Having examined the Complaint[2] (ECF No. 3) and the Exhibits attached thereto (ECF Nos. 3-1 – 3-13), the undersigned concludes that this case must be dismissed pursuant to 28 U.S.C. § 1915A(b) which provides that the Court shall dismiss a complaint at any time if the Court determines that the action fails to state a claim for which relief can be granted, therefore, after further consideration of the pleadings filed herein, as well as pertinent legal authority, the undersigned concludes that all Defendants' ***Motions*** should be **GRANTED** for the reasons stated *infra*.

## FACTUAL BACKGROUND OF CASE

In order to obtain a better understanding of what happened in this case, thus causing Plaintiff to file his Complaint, it was necessary to provide an overview of Plaintiff's allegations in light of the Defendants' responses thereto. Thus, a review of the pleadings and exhibits indicates that in the very early morning hours of November 1, 2018, Plaintiff was stopped for an inoperative registration light and unclear license plate. Upon further inspection, Sgt. Bowers determined Plaintiff's license plate was fraudulent, his driver's license was fraudulent, and Plaintiff had no insurance coverage for his vehicle. As a result, Plaintiff's vehicle was towed and impounded and Plaintiff was arrested for: (1) Forgery of Motor Vehicle Title, Registration Card or Registration Plate; (2) Defective Equipment; (3) Expired Operators; (4) Fictitious Operators; (5) and Obstructing, in violation of West Virginia Code Sections 17A-9-4, 17C-5-1, 17B-2-12, 61-5-17, respectively. (ECF Nos. 3-9, 39-2, 39-4) Following his arrest, Plaintiff refused to cooperate during processing, refused to be fingerprinted, refused to be arraigned and was subsequently committed to SRJ. (ECF No. 39-2)

---

[2] As an initial matter, throughout this proposed recommendation, the undersigned quotes language from Plaintiff's Complaint and his Amended Complaint *verbatim*, without modification or correction to any of the misspellings, grammatical errors, capitalizations or certain phrases Plaintiff used throughout his pleadings (i.e. "thee"), as they are numerous and pervasive.

On February 12, 2018, Plaintiff removed his criminal case to Raleigh County Circuit Court and on February 14, 2018, he posted a $10,000 bond and was released. (ECF Nos. 39-6, 39-7) Once he removed his case to Raleigh County Circuit Court, Plaintiff moved to dismiss the case, to expunge his record, or alternatively, to transfer the case to the Western District of Pennsylvania. (ECF No. 39-8 at 1-11) Raleigh County Circuit Court Judge Andrew Dimlich denied Plaintiff's motion, upon which Plaintiff filed a motion to reconsider, which was also denied by Judge Dimlich. (ECF Nos. 39-1, 39-9) Accordingly, on April 9, 2018, Plaintiff filed a Writ of Prohibition with the West Virginia Supreme Court of Appeals against the Raleigh County Circuit Court contending it had no jurisdiction over him, that venue was improper and that his case should have been transferred to the federal court in Pennsylvania. (ECF No. 39-10) The West Virginia Supreme Court of Appeals refused the Writ on April 11, 2019. (ECF No. 39-11) While the first Writ was pending, Plaintiff was charged with additional counts relating to the same stop in August 2018, prompting Plaintiff to file another Writ of Prohibition to the West Virginia Supreme Court of Appeals relating to the additional counts against The Honorable Tomi Peck and State Police Officer Donnie R. White (ECF No. 39-12); the West Virginia Supreme Court of Appeals dismissed this second Writ as duplicative on October 22, 2018 (ECF Nos. 3-12, 39-13).

Plaintiff was never indicted on the State charges.

## PROCEDURAL HISTORY

On January 6, 2020, Plaintiff, *pro se*[3], filed an Application to Proceed in District Court Without Prepaying Fees or Costs form[4] and his Complaint in the United States District Court for

---

[3] Because Plaintiff is proceeding *pro se*, the documents he has filed in this case are held to a less stringent standard than had they been prepared by a lawyer, therefore, they are construed liberally. See Haines v. Kerner, 404 U.S. 519, 520-521 (1972).
[4] On January 7, 2020, the United States District Court for the Western District of Pennsylvania granted Plaintiff's Application to proceed *in forma pauperis*. (ECF No. 2)

the Western District of Pennsylvania. (ECF Nos. 1, 1-2, 3)[5] Plaintiff's Complaint is filed against the following Defendants: Raleigh County; Southern Regional Jail; City of Beckley; Scott E. Johnson, Assistant Attorney General, "in his individual capacity"; TA Bowers, West Virginia State Police, "in his individual capacity as a member of the West Virginia State Police"; Kristen Keller, PA, "in her individual capacity"; Brian Parsons APA, "in his individual capacity"; The Honorable Andrew Dimlich, Judge of the Circuit Court of Raleigh County "in his individual capacity"; Donnie R. White, West Virginia State Police, "in his individual capacity as a member of the West Virginia State Police"; Tomi S. Peck, Magistrate of Raleigh County, "in her individual capacity"; and Charles R. Humphrey, Magistrate of Raleigh County, "in his individual capacity." (Id.)

Following a briefing schedule, the United States District Court for the Western District of Pennsylvania entered an order on March 26, 2020 granting those motions requesting transfer to this Court's jurisdiction, and terminating those motions requesting dismissal (ECF No. 27); on March 27, 2020, this civil action was transferred to this Court (ECF No. 28). By Order entered on March 27, 2020, this matter was referred to the undersigned for the submission of proposed findings of fact and a recommendation for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). (ECF No. 29)

On April 6, 2020, Defendant City of Beckley filed its Motion to Dismiss in Lieu of An Answer and its Memorandum of Law in support of same (ECF Nos. 35, 36). On April 7, 2020, the undersigned issued a Roseboro notice[6] to Plaintiff to respond to Defendant's motion by April 21, 2020 (ECF No. 37).

---

[5] For ease of reference, the undersigned will only refer to ECF No. 3 and its accompanying exhibits while discussing Plaintiff's allegations.

[6] Pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975); because Plaintiff is acting pro se, the Court issued its Order notifying Plaintiff of his right to file a response to Defendant's Motion and further ordered that Plaintiff file any response with the Clerk of this Court.

On April 8, 2020, Defendants Southern Regional Jail, Scott E. Johnson, Andrew Dimlich, Tomi S. Peck, and Charles R. Humphrey filed their Motion to Dismiss and Memorandum in Support of same (ECF Nos. 38, 39). On April 8, 2020, the undersigned issued a <u>Roseboro</u> notice to Plaintiff to respond to Defendants' motion by April 22, 2020 (ECF No. 40).

On April 8, 2020, Defendant City of Beckley filed its Amended Motion to Dismiss in Lieu of an Answer (ECF No. 41). On April 9, 2020, the undersigned issued a <u>Roseboro</u> notice to Plaintiff to respond to Defendant's motion by April 23, 2020 (ECF No. 43).

On April 9, 2020, Defendants Sgt. T.A. Bowers and Cpl. D.R. White filed their Motion to Dismiss and supporting Memorandum of Law (ECF Nos. 44, 49) On April 10, 2020, the undersigned issued a <u>Roseboro</u> notice to Plaintiff to respond to Defendants' motion by April 24, 2020 (ECF No. 45).

On April 10, 2020, Defendants Raleigh County, Kristen Keller and Brian Parsons filed their Motion to Dismiss in Lieu of an Answer and supporting Memorandum of Law (ECF Nos. 46, 47). On April 10, 2020, the undersigned issued a <u>Roseboro</u> notice to Plaintiff to respond to Defendants' motion by April 24, 2020 (ECF No. 48).

On April 30, 2020, Plaintiff filed an Amended Complaint (ECF No. 50), along with several attachments: a proposed judgment order (ECF No. 50-1); exhibits that were previously attached to Plaintiff's initial Complaint, specifically Exhibits A through C-1, described *infra* (ECF No. 50-2); a CD of a video recording, "Exhibit D", entitled "2nd Stop . . . Bowers", which appears to have been recorded by Plaintiff himself during a traffic stop (ECF No. 50-3)[7]; several exhibits which

---

[7] The video recording of the traffic stop is 49 minutes, 22 seconds and shows Plaintiff seated in his vehicle during the traffic stop. It appears that Plaintiff himself recorded the encounter and corroborates Plaintiff's assertion that his "mobile security video from Plaintiff's automobile captured the incident[]." (ECF No. 3 at 11) Most of the recording consists of Plaintiff seated with his seatbelt fastened with his hands on his head waiting on the law enforcement officer to check the validity of his driver's license, registration, and insurance coverage. After having been informed that the validity of Plaintiff's documents was unable to be verified, Plaintiff was arrested without incident.

were previously attached to Plaintiff's initial Complaint, specifically Exhibits E through L, described *infra* (ECF No. 50-4), including a new exhibit, "Exhibit M", which appears to be a copy of a Pennsylvania Department of Transportation receipt dated January 20, 2018 for a driver's license/photo ID change of address for $0.00 for driver's license/photo ID number 23999931 (Id. at 13); and "Exhibit S", which is a copy of an article entitled "West Virginia White Supremacist Officers Are Latest Racists Exposed in Law Enforcement," by Bruce C.T. White, posted December 7, 2019, concerning the Nazi salute by graduating correctional officers following completion of their training program (Id. at 14).

On May 5, 2020, in response to Plaintiff's filing of the Amended Complaint, Defendant City of Beckley filed a Motion to Dismiss with a supporting Memorandum of Law (ECF Nos. 51, 52). On May 6, 2020, in response to Plaintiff's filing of the Amended Complaint, Defendants Sgt. T.A. Bowers and Cpl. D.R. White filed their Motion to Dismiss and supporting Memorandum of Law (ECF Nos. 53, 54). On May 7, 2020, in response to Plaintiff's filing of the Amended Complaint, Defendants Raleigh County, Kristen Keller and Brian Parsons filed their Motion to Dismiss and supporting Memorandum of Law (ECF Nos. 55, 56). Finally, also in response to Plaintiff's Amended Complaint, Defendants Southern Regional Jail, Scott E. Johnson, Andrew Dimlich, Tomi S. Peck, and Charles R. Humphrey filed their Motion to Dismiss and supporting Memorandum in Support on May 11, 2020 (ECF Nos. 57, 58).

Having construed that Plaintiff's Amended Complaint (ECF No. 50) and its accompanying Exhibits (ECF Nos. 50-1 through 50-4)[8] as Plaintiff's responses to Defendants' previous motions

---

[8] A review of Plaintiff's Amended Complaint and its accompanying exhibits indicates that Plaintiff added two additional Defendants, namely "Thee County Commission of Raleigh County" and "West Virginia Department of Military Affairs and Public Safety" (ECF No. 50 at 4-5, 5-6), ostensibly in response to Defendants City of Beckley's and Raleigh County's motions to dismiss. Additionally, Plaintiff amended some of the language to his original Complaint to the extent that the "Negligence" Count has been applied to not only to the Southern Regional Jail, but also to the Department of Military Affairs and Public Safety, Raleigh County and the City of Beckley, and that he was also denied recreation during his stay at the Southern Regional Jail (Id. at 20); Plaintiff also includes additional

to dismiss, the undersigned declined to issue another series of <u>Roseboro</u> notices to Plaintiff. Accordingly, the arguments raised in the pleadings filed herein are ripe for decision.[9]

## PLAINTIFF'S FACTUAL ALLEGATIONS

On January 7, 2020, Plaintiff, acting *pro se*, filed his Complaint invoking federal question jurisdiction claiming entitlement to relief under 42 U.S.C. §§ 1983, 1985, and 1986 alleging that Defendants violated Plaintiff's constitutional rights under the "privileges and immunities clause" as well as under  the Fourth, Fifth, Eighth, Ninth, Thirteenth, and Fourteenth Amendments. (ECF No. 3 at 4) Plaintiff also invokes this Court's supplemental jurisdiction under 28 U.S.C. § 1367 because Plaintiff's state law claims "form part of the same case or controversy under Article III of the United States Constitution." (<u>Id</u>.) Plaintiff asserts that he is a citizen of Pennsylvania[10] and that all Defendants herein are citizens of West Virginia, thus "diversity is properly plead." (<u>Id</u>. at 5)

As for the factual allegations, Plaintiff asserts that on the morning of February 1, 2018, he was travelling through Raleigh County, West Virginia as a single passenger motorist. (<u>Id</u>. at 11) On this day, Plaintiff alleges Defendant Bowers stopped and detained Plaintiff, issued a couple of citations and then released Plaintiff. (<u>Id</u>.) Subsequently, Plaintiff was stopped by Defendant

---

language concerning the applicable statute of limitations, again, ostensibly in response to Defendants Raleigh County, Kristen Keller and Brian Parsons motion to dismiss. The revisions provide no substantive difference in his claims as originally alleged. Finally, the undersigned notes that Plaintiff's Amended Complaint includes several references that all Defendants herein violated their own "policy" or "procedures" and refers to "Exhibit S" in support of this allegation, however, as noted *supra*, this exhibit is an article concerning events that have no relevance to the allegations concerning Plaintiff's original or amended complaints. In short, the undersigned has concluded that Plaintiff's Amended Complaint provides no additional factual allegations that would modify the original Complaint in any significant or substantive respect, indeed, nearly the entirety of the Amended Complaint contains the exact same allegations as the original.

[9] Because the undersigned construed Plaintiff's Amended Complaint as his response to Defendants' previously filed motions to dismiss, and because the undersigned recommends that those prior motions be granted and that Plaintiff's Complaint be dismissed, the subsequently filed motions to dismiss filed by Defendants herein (ECF Nos. 51, 53, 55, 57) are hereby **DENIED** as **MOOT**.

[10] Bizarrely, Plaintiff also refers to himself as "thee Director and Beneficiary and bring[s] this action on behalf of my legal person/corporation, RAYCO SAUNDERS™, as applied through 42 U.S.C. § 1983, § 1985 and § 1986[]" (ECF No. 3 at 3) and signs his Complaint as "Rayco Saunders™" (<u>Id</u>. at 32). To the extent Plaintiff presumes to be a corporation, the undersigned notes that corporations cannot bring Section 1983 claims.

Bowers again "for a blown out license plate light" and Defendant Bowers accused Plaintiff of having committed a crime "by placing 'Pennsylvania Traveler,' on my automobile and having a 'fictitious' identification[]." (Id.) Plaintiff further alleges that Defendant Bowers, under the "objectively unreasonable presumption that Plaintiff, committed the crime of auto theft", checked his vehicle's vin number on the dash and compared it with the vin number on the door. (Id.) Plaintiff alleges that Defendant Bowers "stated he spoke to State Farm" and determined his automobile insurance was fraudulent and towed his vehicle, "despite being shown and given a valid 'insurance card.' " (Id. at 12) Plaintiff asserts he has not been towed or ticketed one time in the State of Pennsylvania since attaching the Pennsylvania Traveler plates to his vehicle, which is "properly filed and classified as Consumer Goods, per UCC 9-109, and also properly de-registered in accordance with title 75 Pa.C.S.A. § 1303." (Id.) Defendant Bowers had Plaintiff exit his vehicle and was arrested and handcuffed without having been Mirandized. (Id.) Plaintiff was then taken to an office and later transported to Southern Regional Jail. (Id.)

Plaintiff alleges Defendant Bowers initially allowed him to go free, which is on video, but then "in a blatant attempt to cover-up his unlawful actions, [] executed a criminal complaint bringing several false charges against Plaintiff, including Fraud (a felony), obstructing an officer, fictitious ID and dangerous property (blown light bulb)." (Id.) Plaintiff further alleges he was "unlawfully held" in one room with the lights on 24 hours a day with no soap, no toothpaste, no bed, and had to sleep on the concrete floor for approximately twelve days. (Id. at 13) Plaintiff was denied bail "because Plaintiff, exercised constitutional protected right(s), by not talking to anyone, including but not limited to Magistrate #2 and/or not consenting to (notwithstanding thee verbal Cease & Desist demands) thee numerous request for blood." (Id.) Plaintiff was then "rushed" to court without notice of a preliminary hearing and then permitted to bond out for $10,000 and his

vehicle was released for $500. (Id.) Plaintiff filed a motion dismiss or alternatively, to transfer his State matters "to a county closer to Plaintiff", however, his motion was denied. (Id.)

Plaintiff alleges the charges against him are false and "maliciously charged" in violation of 18 U.S.C. §§ 241, 242 "and/or possibly [in] violation of any or all of the provisions of 18 U.S.C. §§ 1962(a), (b), (c), (d) and (42 U.S.C. § 14141)." (Id. at 14) Plaintiff alleges that Defendants Bowers and White attempted to further cover up "unlawful actions" by "falsely" charging Plaintiff with the same traffic violations after Plaintiff left the State of West Virginia and having "removed thee entire case to thee WEST VIRGNIA STATE SUPREME COURT[.]" (Id.) Plaintiff appears to allege that he filed a writ of mandamus to the West Virginia Supreme Court of Appeals however, "thee ASISSTANT asked for and was granted. A motion dismissal." (Id.) Later, Plaintiff received a telephone call from "thee MAGISTRATE, and although, it was never accepted, agreed, pled, nor contracted to appear, Plaintiff, was notified via US postal mail that thee frivolous 'traffic violations' were converted to a 'criminal' offense and unlawfully scheduled to appear for pretrial." (Id.) Plaintiff further alleges that "[a]fter many 'unanswered' petitions filed with thee inferior tribunals of Raleigh County, on 17 October, 2018, Plaintiff, presented to the West Virginia Supreme Court an emergency petition . . . for writ of prohibition/mandamus to be directed against" Defendants Dimlich, Peck, and White. (Id. at 15) Plaintiff states that on October 22, 2018, the West Virginia Supreme Court entered an order declining to docket the matter, having determined that Plaintiff raised the same issues as before. (Id.)

Plaintiff next alleges that "the ASSISTANT Attorney General to do the thing which Plaintiff, seek to compel, but he asked the COURT to dismiss the WRIT OF MANDAMUS that was filed, in regards to the NEW CASE # 18-M41M-00729, on or about, 27 July 2018" and that "[t]hee Judge, officer and prosecuting attorney knew this case had been moved from thee inferior

tribunal." (<u>Id</u>. at 15-16) Plaintiff appears to allege that this conduct that in violation of "both the due process and the equal protection clauses of the Fourteenth Amendment. There was a clear absence of jurisdiction." (<u>Id</u>. at 16)

Plaintiff next alleges for "Count 1", that on February 1, 2018, Defendant Bowers, while acting under color of law, violated Plaintiff's rights to be free from unreasonable search and seizure, unlawful taking, personal injury, false imprisonment, official oppression and cruel and unusual punishment pursuant to 42 U.S.C. § 1983 and that Defendant Bowers violated Plaintiff's constitutional rights under the privileges and immunities clause, and under the Fourth, Fifth, Eight and Thirteenth Amendments. (<u>Id</u>. at 16-17) Plaintiff asserts Defendant Bowers actions were "unlawful unreasonable, and unjustified, as Plaintiff was not a resident of WEST VIRGINIA, and committed no crimes." (<u>Id</u>. at 17) Plaintiff further asserts that "[a]s a direct and proximate result of [Defendant] Bowers" actions, Plaintiff "suffered severe injuries" and "will seek compensation for: past and future economic and non-economic damages; pain and suffering both in the past and in the future; an impairment of the capacity to enjoy life, both in the past and in the future; annoyance, aggravation, inconvenience, and mental anguish, both in the past and in the future." (<u>Id</u>.) Plaintiff states he will also seek to recover attorney's fees and costs as "Plaintiff is In propria persona sui juris". (<u>Id</u>.) Plaintiff asserts that Defendant Bowers' conduct was "reprehensible, willful and wanton, malicious, and in blatant and intentional disregard for the rights owed to Plaintiff" and therefore seeks an award for punitive damages. (<u>Id</u>.)

Next, for "Count 2", which concerns Plaintiff's claims for State constitutional violations and "Commercial Tort Claims", in addition to the allegations contained in "Count 1", Plaintiff alleges that Defendant Bowers' conduct resulted in Plaintiff suffering from mental anguish, loss of employment and wages as well as "severe injuries to reputation." (<u>Id</u>. at 18)

For "Count 3", which concerns Plaintiff's claim for negligence, in addition to the aforementioned violations of his constitutional rights and damages as they relate thereto, Plaintiff alleges that Defendant Southern Regional Jail owed Plaintiff a duty of care and states that Defendant Southern Regional Jail "while acting within the scope of an inherent fiduciary relationship" breached that duty, willfully, wantonly and maliciously, thus "giving rise to the claim of fraud" by making a material misrepresentation of fact, thus entitling Plaintiff to punitive damages. (Id. at 19-20) Specifically, Plaintiff alleges that his breach of fiduciary duty claim is based on the fact that for approximately twelve days, Plaintiff was held in "ONE room", "lights on 24 hrs a day", "NO soap", "NO toothpaste", "NO bed . . . sleeping on the Concrete floor", and "DENIED POSTING BAIL (which at ALL times Plaintiff was able & ready to post)." (Id. at 19)

For "Count 4", which concerns Plaintiff's claims under 42 U.S.C. § 1985, Plaintiff alleges that Defendants Bowers, White, Dimlich, Peck, Keller, and Parsons violated Plaintiff's aforementioned constitutional rights and damages as they relate thereto, and specifically that on or about February 14, 2018, Defendant White filed a criminal complaint against Plaintiff for "various false charges for the same course of conduct and given a NEW CASE # 18-M41M-00729." (Id. at 20) Plaintiff asserts that the criminal complaint contained false statements and claims it "was a willful, malicious, and/or intentional abuse or misuse of lawful process." (Id. at 21) Plaintiff further alleges that Defendant White's "false criminal complaint and the resulting attempted prosecution by [Defendants Dimlich, Peck, Keller, and Parsons], when they knew that thee entire case was removed to the WEST VIRGINIA SUPREME COURT 18-0307, was a willful, malicious, and/or intentional abuse or misuse of lawful process for the accomplishment of a wrongful objective." (Id.)

Plaintiff alleges that Defendant White's criminal complaint was without reasonable or probable cause, and was a fabrication. (Id.) Plaintiff states that the charges were "refuted" by the West Virginia Supreme Court order "(18-0894)" which provided that "[t]he petitioner presents (the same) issues in his petition as raised in Supreme Court Case No. 18-0307. Therefore, this matter will not be docketed." (Id.) Plaintiff alleges that Defendants White, Dimlich, Peck, Keller, and Parsons conduct was "reprehensible, willful and wanton, malicious, and in blatant and intentional disregard to the rights owed to Plaintiff", thus entitling him to an award of punitive damages. (Id. at 22)

Next, for "Count 5", Plaintiff asserts a claim for intentional infliction of emotional distress against Defendants White, Dimlich, Peck, Keller and Parsons as their conduct relates to the "false criminal complaint and the resulting attempted prosecution", Plaintiff alleges he suffered from "severe emotional distress", including all the aforementioned damages for which he will seek recompense. (Id. at 22-23)

Next, for "Count 6", which concerns Plaintiff's claim for abuse of process against Defendants Bowers, White, Dimlich, Peck, Humphrey, Keller and Parsons, Plaintiff alleges that these Defendants filed false criminal complaints and their attempt to prosecute him "was a willful, malicious, and/or intentional abuse or misuse of lawful process for the accomplishment of a wrongful objective." (Id. at 23) Specifically, Plaintiff asserts that the criminal complaints and attempted prosecution of the charges were "without reasonable or probable cause, and were fabricated by [Defendant] Bowers and/or [Defendant] White to cover-up and/or justify thee unlawful stop, detainment, arrest and/or imprisonment." (Id. at 24) Plaintiff states that the "charges from [Defendant] Bowers are refuted by recorded video as well as documented filings with thee COMMONWEALTH OF PENNSYLVANIA and thee charges from [Defendant] White are

refuted by thee WEST VIRIGNIA SUPREME COURT order (18-0894)[.]" (<u>Id</u>.) Plaintiff next claims that as a direct and proximate result of [Defendants Bowers, White, Dimlich, Humphrey, Peck, Keller, and Parsons] "abuse of process, Plaintiff, as a SAG-AFTRA actor, scheduled on 1 FEB 2018, to report On Set, to film a movie, was a 'No Call No Show', and not being contacted since, has suffered damages, including but not limited to, past and future economical damages, emotional pain and suffering, annoyance, aggravation, inconvenience, mental anguish, and humiliation, as well as damage to my name and reputation." (<u>Id</u>. at 24-25) In addition, Plaintiff alleges that as a proximate result of "ALL DEFENDANTS abuse of process", he was under the restrictions of bond "and ordered not to leave the United States of America" which caused him to be "under 'restricted travel' " and unable to return to his home in Cameroon, West Africa. (<u>Id</u>. at 25)

Next, for "Count 7", which concerns Plaintiff's claim under 42 U.S.C. § 1986, Plaintiff appears to allege that the "ASSISTANT Attorney General" moved "the COURT" to dismiss Plaintiff's writ of mandamus regarding "the NEW CASE # 18-M41M-00729" on or about July 27, 2018 and moved to dismiss Plaintiff's "MOTION FOR LEAVE TO SUPPLEMENT THE RECORD ON APPEAL FOR GOOD CAUSE SHOWN" even though "thee Prosecution withheld some of the 'documents at controversy' from thee Court[.]" (<u>Id</u>. at 24-25) Plaintiff alleges that the actions of "Thee ASSISTANT" were "reprehensible, willful and wanton, malicious, and in blatant and intentional disregard to the rights owed to Plaintiff", thus entitling him to an award of punitive damages. (<u>Id</u>. at 26)

As for "Count 8", which concerns Plaintiff's claims arising under Article IV sections 1 and 2, pertaining to full faith and credit, Plaintiff appears to allege that Defendant Bowers violated the privileges and immunities clause of the United States Constitution when he arrested and detained

Plaintiff on February 1, 2018 when acting under the "ineffective policy" provided under "thee Authorities/Guidelines" as it "did not include any guidance whatsoever as to whether and how to conduct traffic stops on Non-residents." (Id. at 26-27) Plaintiff reasserts Defendant Bowers violated Plaintiff's constitutional rights and caused him to suffer the aforementioned economic and noneconomic damages, both past and future. (Id. at 27) Plaintiff reasserts that "[t]he actions of" Defendants Bowers, White, Keller, Parsons, Humphrey, Peck, Dimlich, Johnson, the Southern Regional Jail, the City of Beckley, and Raleigh County "against Plaintiff were reprehensible, willful and wanton, malicious, and in blatant and intentional disregard to the rights owed to Plaintiff", thus entitling him to an award of punitive damages. (Id.)

Plaintiff next provides a "Summary of Law", describing various intentional torts and other legal tenets, but without any explicit reference to any of the named Defendants herein. (Id. at 28)

Plaintiff then claims that Defendants City of Beckley and Raleigh County are liable to Plaintiff for all his damages pursuant to Monell v. Department of Soc. Servs., 436 U.S. 658 (1978). (Id. at 29) Plaintiff further alleges that Defendants City of Beckley and Raleigh County are also liable to Plaintiff under "42 U.S.C. § 1983 for violating thee Plaintiff's rights guaranteed by thee, U.S. CONST. Article IV, sec 1 & 2. Amends. IV, V, VIII, XIII, IX and/or in addition and/or in thee alternative as Article IV sec 1 & 2. Amends. IV, V, VIII, XIII, IX has been incorporated to apply to thee states pursuant to thee Fourteenth Amendment." (Id.) Plaintiff states that Defendants Southern Regional Jail, Johnson, Bowers, White, Dimlich, Humphrey, Peck, Keller, and Parsons were "at all times referenced in this pleadings acting in thee course and scope of their duties of and for the CITY OF BECKLEY and RALEIGH COUNTY and All Defendants were acting under thee color of state law." (Id.) Plaintiff also asserts that Defendants City of Beckley and Raleigh County "acted or failed to act under the color of state law at all relevant times" and their "customs,

practices, and/or policies caused, were a proximate cause of, and/or were thee producing cause of Plaintiff's damages." (Id. at 29-30) Plaintiff further asserts that "[t]hee chief policy maker's failure to adopt, upon information and belief, policies referenced in this pleading, as well as thee failure to stop customs, practices and policies which developed and which are mentioned in this pleading, were intentional choices." (Id. at 30) Plaintiff alleges that Defendants City of Beckley and Raleigh County acted "deliberately indifferent to, and acted in an objectively unreasonably manner regarding, Plaintiff's constitutional protected rights (as well as thee rights of others who suffered constitutional protected rights violations at thee hands of law enforcement.)." (Id.) Plaintiff asserts that the actions "and/or Lack thereof" of Defendants Raleigh County, City of Beckley, Southern Regional Jail, Johnson, Bowers, White, Dimlich, Humphrey, Peck, Keller, and Parsons "were reprehensible, willful and wanton, malicious, and in blatant and intentional disregard to the rights owed to Plaintiff", thus entitling him to an award of punitive damages. (Id.)

Plaintiff concludes that "[a]ll conditions precedent to assertion of Plaintiff's have occurred." (Id.)

Plaintiff demands a jury trial and for damages against all Defendants "jointly and severally" for mental anguish and emotional distress, both past and future; loss of income and earning capacity, loss of benefits of employment, loss of job performance and job training, as well as the related loss of future earnings power and potential; exemplary/punitive damages; his reasonable and necessary attorney's fees "for Plaintiff through trial and any appeals and other appellate proceedings"; his court costs and other recoverable costs; pre- and post-judgment interest; and for all other relief, legal and equitable, general and special to which Plaintiff is entitled; for damages for pain, suffering, psychological damages, loss of enjoyment of life; and damages recoverable

"under thee applicable insurance policy(s), compensatory and consequential damages, including and additional relief as this Court deems fitting and proper." (Id. at 30-31)

Throughout his Complaint, Plaintiff also refers to several Exhibits he attached in support, which are described as follows:

1. "Exhibit A" and "Exhibit A-1" concerns an email dated January 30, 2018 from Hylton Casting to "undisclosed recipients" regarding an "extras availability check" in the series finale of "Being Mary Jane" seeking availability to work as an extra for filming scenes in Atlanta, Georgia on February 1, 2018 and/or February 5, 2018, with a booking confirmation for working as an extra on February 1, 2018. (ECF No. 3-2)

2. "Exhibit B" concerns a copy of a ticket for traffic violations occurring at or in Fayette County, Mount Hope, for speeding and expired operators, and dated February 1, 2018 at 1:00 a.m. to Plaintiff by Officer D. Adams of the Mount Hope Police Department. (ECF No. 3-3)

3. "Exhibit C" concerns a copy of a "Traveler I.D." for "Rayco Lashon Saunders" with a notary seal. (ECF No. 3-4) "Exhibit C-1" is an indecipherable photocopy. (Id.)

4. "Exhibit D" concerns a handwritten note stating "Video of Incident". (ECF No. 3-5)

5. "Exhibit E" concerns a copy of an auto renewal notice issued by State Farm to Plaintiff, indicating a "premium paid" of $372.38, policy number 298 9893-E04-38A, policy period of November 4, 2017 to May 4, 2018, for a 2002 Mercedes CL55 AMG. (ECF No. 3-6)

6. "Exhibit F" concerns an email dated June 18, 2018 to Plaintiff from "April Piccolo", office manager, concerning a renewal, payment amount and coverage dates for State Farm insurance. (ECF No. 3-7)

7.  "Exhibit G" appears to be a copy of a Pennsylvania statute concerning "Vehicles of nonresidents exempt from registration." (ECF No. 3-8) "Exhibit G-1" appears to be a visa issued from the embassy of Cameroon to Plaintiff. (<u>Id</u>. at 2) "Exhibit G-2" appears to be a postmarked envelope to Plaintiff ostensibly with a Cameroon address. (<u>Id</u>. at 3) "Exhibit G-3" appears to be a "Carte Professionnelle" by the Republic of Cameroon to Plaintiff. (<u>Id</u>. at 4) "Exhibit G-4" concerns an UCC Financing Statement concerning Plaintiff who is listed as both the "Debtor" as well as the "Secured Party" with the 2002 Mercedes-Benz CL 55 AMG as collateral. (<u>Id</u>. at 5)

8.  "Exhibit H" concerns a copy of the Jail Commitment Order dated February 1, 2018 on 1:35 p.m. entered by Magistrate Charles R. Humphrey, in the Magistrate Court of Raleigh County, West Virginia in regards to Plaintiff for the charges of forgery of motor vehicle title, registration card or registration plate, defective equipment, expired operators, fictitious operators, and obstructing. The case number is listed as 18-M41F-00078; 18-M41M-00402. (ECF No. 3-9)

9.  "Exhibit I" concerns a pleading filed on March 21, 2018 in the Circuit Court of Raleigh County, West Virginia, in case styled "State of West Virginia vs. Rayco Saunders", indictment number 18-PCR-61-B, 18-B-67-K, 18-M41-F-00078, 18-M41-M-00402. The pleading appears to have been filed by Brian D. Parsons, Assistant Prosecuting Attorney, and entitled "Response to Motion for Reconsideration". (ECF No. 3-10)

10. "Exhibit J" concerns a "Notice to Appear" issued to Plaintiff at his address in Pittsburgh, Pennsylvania by the Magistrate Court of Raleigh County, West Virginia, dated July 18, 2018 in the case number 18-M41M-00729, State v. Rayco L. Saunders. (ECF No. 3-11) The law enforcement officer/plaintiff is listed as Donnie R. White, and concerns the

charges of expired operators and no insurance in violation of 17B-2-12 and 17D-2A-3, respectively. (Id.) The "Notice" indicates that a hearing on the matter was scheduled for October 18, 2018 before Magistrate Tomi S. Peck at the Raleigh County Magistrate Court in Beckley, West Virginia. (Id.)

11. "Exhibit K" is an Order entered by the West Virginia Supreme Court of Appeals on October 22, 2018 in the case of State of West Virginia ex rel. Rayco Saunders, Petitioner vs. The Honorable Andrew Dimlich, Judge of the Circuit Court of Raleigh County, Tomi S. Peck, Magistrate in the Magistrate Court of Raleigh County, and Donnie R. White, in his official capacity with the WV State Police, Respondents. (ECF No. 3-12) The Order states that "[o]n October 17, 2018, the petitioner, Rayco Saunders, pro se, presented to the Court his petition praying for a writ of prohibition/mandamus to be directed against the respondents" and notes that "[t]he petitioner presents the same issues in his petition as raised in Supreme Court Case No. 18-0307. Therefore, this matter will not be docketed." (Id.)

12. "Exhibit L" concerns the "Respondent's Response Objecting to Petitioner's Motion for Leave to Supplement the Record on Appeal for Good Cause Shown with Writ of Mandamus" filed by Scott E. Johnson, Assistant Attorney General, in the West Virginia Supreme Court of Appeals in docket number 18-0307, in the case styled as *State of West Virginia, Plaintiff below, Respondent v. Rayco Saunders, Defendant below, Petitioner.* (ECF No. 3-13)

### Defendant City of Beckley's Argument for Dismissal

The City of Beckley contends that dismissal is appropriate because Plaintiff only alleges that the City of Beckley was "[r]esponsible for the appointment, training, supervision, and conduct

of all personnel . . . at the SRJ." (ECF Nos. 36 at 2 and 41 at 3, citing ECF No. 3 at ¶ 10) The City

of Beckley asserts that although Plaintiff correctly pleads that the City is a municipal corporation

operating pursuant to the Constitution and the laws of the State of West Virginia, however,

pursuant to W. Va. Code § 5F-2-1(i)(10), the Regional Jail and Correctional Facility Authority,

including the Southern Regional Jail, is incorporated into and administered by the West Virginia

Department of Military Affairs & Public Safety, a state agency, not a municipality. (ECF No. 36

at 5) Additionally, the City argues that it does not own, operate, staff, supervise, or maintain the

Southern Regional Jail as Plaintiff alleges; the City maintains that this Court may take judicial

notice of this pursuant to Rule 201 of the Federal Rules of Evidence. (Id.) The City of Beckley

asks this Court to dismiss Plaintiff's Complaint with prejudice pursuant to Rule 12 of the Federal

Rules of Civil Procedure and asks for its costs and fees associated with bringing the motion. (Id.

at 6)

### Defendants Southern Regional Jail, Scott E. Johnson, Andrew Dimlich, Tomi S. Peck, and Charles R. Humphrey's Argument for Dismissal

These collective Defendants have asserted several specific immunities that mandate

dismissal of this action.

For starters, the Southern Regional Jail states that Plaintiff is unable to bring a Section 1983

lawsuit against it because it is not a "person", and thus violates the Eleventh Amendment; further,

Plaintiff has not alleged any exception recognized by this Court's jurisprudence that permits this

action. (ECF No. 39 at 5-7) West Virginia Circuit Court Judge Andrew Dimlich and Raleigh

County Magistrates Tomi S. Peck and Charles R. Humphrey are immune from this suit as

Plaintiff's varied claims against them concern judicial acts and thus protected via judicial

immunity. (Id. at 7-10) Scott E. Johnson, Assistant Attorney General for the State of West Virginia,

is also immune from Plaintiff's claims. Mr. Johnson's interaction in this case is based entirely on

his prosecution of Plaintiff's claim at the state appellate level. (<u>Id</u>. at 10-11) These Defendants further assert that in even in the event they are not protected by absolute immunity, they are nevertheless protected by qualified immunity. (<u>Id</u>. at 11-12)

Additionally, Plaintiff's claims against the Southern Regional Jail are meritless to the extent that he alleged it owed him a fiduciary duty because no such duty exists under law, only a normal duty of care. (<u>Id</u>. at 12-14) To the extent Plaintiff claims he was denied hygiene items and blankets, the Fourth Circuit has routinely held that temporary deprivation of hygiene items where a plaintiff has not alleged any harm is insufficient to establish a constitutional violation. (<u>Id</u>. at 14-15) Further, as there is no constitutional right to bail, this claim also fails as a matter of law. (<u>Id</u>. at 15)

Plaintiff's claims of conspiracy and intentional infliction of emotional distress against Judge Dimlich and Magistrate Peck lack factual support for same and should be dismissed as a matter of law. (<u>Id</u>. at 16-18) Moreover, Plaintiff's claim of abuse of process against Judge Dimlich, Magistrates Peck and Humphrey fails to state a claim because it too, is without any factual support; Plaintiff's Section 1986 claim against Scott E. Johnson also fails for the same reason. (<u>Id</u>. at 18)

Plaintiff's claim that these Defendants violated the Full Faith and Credit Clause is also without merit and is a hallmark of sovereign citizen "legal theory" and  provides no basis for this claim, other than he was arrested for having a malfunctioning vehicle with fake plates and a fake license. (<u>Id</u>. at 19) This Court and several courts throughout the United States have dismissed such sovereign citizen suits for being frivolous on its face – Plaintiff's civil action is such a patently frivolous suit that merits dismissal *ab initio*, especially given his declaration that he is also a corporation, which cannot bring Section 1983 claims. (<u>Id</u>. at 20-21)

**Defendants Sgt. T.A. Bowers and Cpl. D.R. White's Argument for Dismissal**

Defendants Bowers and White explain that regardless of Plaintiff's claims that their actions violated the Full Faith and Credit Clause, the Privileges and Immunities Clause, the Fourth Amendment, the Fifth Amendment, and the Thirteenth Amendment, only the Fourth Amendment is applicable herein because Plaintiff has only alleged that Defendant Bowers falsely arrested him and that Defendant White falsely based a criminal complaint on the same information used by Defendant Bowers. (ECF No. 49 at 4-5) Plaintiff's arrest was based on probable cause in light of the explicit allegations contained in Plaintiff's Complaint, Plaintiff did not possess a valid driver's license issued by Pennsylvania, but instead presented a fake license to Defendant Bowers, and admits that he "deregistered" his vehicle and placed "Pennsylvania Traveler plates" on his vehicle, representing that this satisfied both Pennsylvania and West Virginia law. (Id. at 6-7) In short, even by Plaintiff's bare allegations, Defendant Bowers had knowledge that Plaintiff had committed or in the process of committing arrestable misdemeanor offenses. (Id. at 7)

Plaintiff has plead insufficient facts to support his claim for intentional infliction of emotional distress claim. (Id. at 7-8) Plaintiff's claim for abuse of process also fails to the extent that not only is it barred by the applicable one-year statute of limitations, but also because Plaintiff fails to allege facts to support such a claim. (Id. at 8-9) Finally, Defendants Bowers and White are entitled to qualified immunity, as the facts alleged in Plaintiff's Complaint demonstrate that probable cause existed for Plaintiff's arrest and for the execution of criminal complaints based upon the same conduct. (Id. at 9-10) These Defendants ask the Court to dismiss Plaintiff's Complaint with prejudice. (Id. at 10)

**Defendants Raleigh County, Kristen Keller and Brian Parsons's Argument for Dismissal**

Defendant Raleigh County argues that it is not a proper party to this litigation, that the County Commission of Raleigh County is, therefore, dismissal is appropriate. (ECF No. 47 at 5-

6) To the extent Plaintiff's claims are against the Southern Regional Jail, Defendant Raleigh County maintains that dismissal is still appropriate because it does not operate or control any of the acts of the Southern Regional Jail; the Southern Regional Jail is administered by the West Virginia Department of Military Affairs & Public Safety. (Id. at 6-7) Defendant Raleigh County also points out that Plaintiff's Section 1983 claim fails because he offers no more than conclusory allegations against it and no facts supporting any other legal theory of liability recognized by this Circuit's jurisprudence. (Id. at 7-9)

In addition, Defendants Raleigh County, Kristen Keller, and Brian Parsons contend that they are immune from suit pursuant to the Governmental Tort Claims and Insurance Reform Act – even where Plaintiff has alleged their conduct was willful, wanton, and/or reckless. (Id. at 9-12) Defendants Keller and Parsons are further entitled to dismissal of all claims because they enjoy absolute prosecutorial immunity, as the facts alleged by Plaintiff demonstrate that their conduct falls within the judicial phase of the criminal process against Plaintiff. (Id. at 12-14) Alternatively, Defendants Keller and Parsons are entitled to dismissal of all claims because they both enjoy qualified immunity even assuming Plaintiff sufficiently plead facts that they acted outside of their prosecutorial functions. (Id. at 14-15)

These Defendants further argue that, to the extent that Plaintiff's claims can be interpreted as malicious prosecution and abuse of process, these claims are barred by the applicable statute of limitations. (Id. at 16-20)

These Defendants ask this Court to dismiss Plaintiff's Complaint as it pertains to them with prejudice and to award them fees and costs associated with bringing their motion. (Id. at 20-21)

**THE STANDARD**

22

Because Plaintiff applied to proceed without prepayment of the Court's filing fees and costs, his Complaint was subject to pre-service screening pursuant to 28 U.S.C. § 1915A. See Johnson v. Hill, 965 F.Supp. 1487 (E.D. Va. Jun. 10, 1997); see also Randolph v. Baltimore City States Atty., 2014 WL 5293708, at *2 (D. Md. Oct. 14, 2014), aff'd, Randolph v. New Technology, 588 Fed.Appx. 219 (4th Cir. 2014). Although the United States District Court for the Western District of Pennsylvania neglected to abide by the pre-service screening prior to authorizing Plaintiff to proceed *in forma pauperis*, nevertheless, "the court shall dismiss the case ***at any time*** if the court determines that: (A) the allegation of poverty is untrue; or (B) the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. See 28 U.S.C. § 1915(e)(2) (emphasis added).

A "frivolous" complaint is one which is based upon an indisputably meritless legal theory. Denton v. Hernandez, 504 U.S. 25 (1992). A *pro se* Complaint may therefore be dismissed for failure to state a claim only if it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Haines v. Kerner, 404 U.S. 519, 521 (1972), *quoting* Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Where a *pro se* Complaint can be remedied by an amendment, however, the District Court may not dismiss the Complaint, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34 (1992).

Though this Court is required to liberally construe *pro se* documents and hold them to a less stringent standard than those drafted by attorneys[11], liberal construction "does not require courts to construct arguments or theories for a *pro se* plaintiff because this would place a court in the improper role of an advocate seeking out the strongest arguments and most successful

---

[11] Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); Loe v. Armistead, 582 F.2d 1291, 1295 (1978).

strategies for a party." <u>Miller v. Jack</u>, 2007 WL 2050409, at *3 (N.D.W.Va. 2007) (citing <u>Gordon v. Leeke</u>, 574 F.2d 1147, 1151 (4th Cir.1978)). Further, liberal construction does not require the "courts to conjure up questions never squarely presented to them." <u>Beaudett v. City of Hampton</u>, 775 F.2d 1274, 1278 (4th Cir. 1985). In other words, a court may not construct legal argument for a plaintiff. <u>Small v. Endicott</u>, 998 F.2d 411 (7th Cir.1993). Finally, the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a claim currently cognizable in a federal district court. <u>Weller v. Department of Social Servs.</u>, 901 F.2d 387 (4th Cir.1990)).

Moreover, Federal Rule of Civil Procedure 8(a)(2) requires that a pleader provide "a short and plain statement of the claim showing ... entitle[ment] to relief." Fed.R.Civ.P. 8(a)(2). Rule 12(b)(6) correspondingly permits a defendant to challenge a complaint when it "fail[s] to state a claim upon which relief can be granted...." Fed.R.Civ.P. 12(b)(6).

The required "short and plain statement" must provide " 'fair notice of what the ... claim is and the grounds upon which it rests.' " <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957), <i>overruled on other grounds</i>, <u>Twombly</u>, 550 U.S. at 562-563)); see also <u>Anderson v. Sara Lee Corp.</u>, 508 F.3d 181, 188 (4th Cir. 2007). Additionally, the showing of an "entitlement to relief" amounts to "more than labels and conclusions . . . ." <u>Twombly</u>, 550 U.S. at 555. It is now settled that "a formulaic recitation of the elements of a cause of action will not do." <u>Id</u>. The complaint need not, however, "make a case" against a defendant or even "forecast evidence sufficient to prove an element" of the claim. <u>Chao v. Rivendell Woods, Inc.</u>, 415 F.3d 342, 349 (4th Cir. 2005) (quoting <u>Iodice v. United States</u>, 289 F.3d 270, 281 (4th Cir. 2002)). Instead, the opening pleading need only contain "[f]actual allegations [sufficient] to raise a right to relief above the speculative level." <u>Twombly</u>, 550 U.S. at

24

555. Stated another way, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." Id. at 570.

Application of the Rule 12(b)(6) standard also requires that the court " 'accept as true all of the factual allegations contained in the complaint....' " Erickson v. Pardus, 127 S.Ct. 2197, 2200 (2007) (quoting Twombly, 550 U.S. at 555); see also South Carolina Dept. Of Health And Environmental Control v. Commerce and Industry Ins. Co., 372 F.3d 245, 255 (4th Cir. 2004) (quoting Franks v. Ross, 313 F.3d 184, 192 (4th Cir. 2002)). The court is additionally required to "draw[ ] all reasonable . . . inferences from those facts in the plaintiff's favor . . . ." Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999).

## ANALYSIS

After having liberally reviewed Plaintiff's Complaint and attached Exhibits, it is clear that Plaintiff's Section 1983 and other statutory claims, as well as his claims under common tort law, are nothing more than collateral attacks to the charges that had been filed against him in the State criminal action in Raleigh County, West Virginia. It is noted that 42 U.S.C. § 1983 provides a remedy for violations of all "rights, privileges, or immunities secured by the Constitution and laws [of the United States]." Thus, Section 1983 provides a "broad remedy for violations of federally protected civil rights." Monell v. Dep't of Social Services, 436 U.S. 658, 685, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Generally speaking, to state and prevail upon a claim under 42 U.S.C. § 1983, a plaintiff must prove that (1) a person acting under color of State law (2) committed an act which deprived him of an alleged right, privilege or immunity protected by the Constitution or laws of the United States.

Construing Plaintiff's allegations liberally, Plaintiff has repeatedly asserted that his constitutional rights were violated at all stages of the State criminal proceeding against him,

beginning with the traffic stop, the subsequent arrest, at his initial appearance, arraignment, eventual detention and during the prosecution of State charges filed against him, as well as during the appeal of certain issues before the West Virginia Supreme Court of Appeals.

Plaintiff's Claims against the City of Beckley Fail as a Matter of Law:

As noted by this Defendant, Plaintiff's only factual allegation with respect to the City of Beckley is that it was "[r]esponsible for the appointment, training, supervision, and conduct of all personnel . . . at the SRJ." (ECF No. 3 at 6; ECF Nos. 35 at 3, 41 at 3, 36 at 2) The City of Beckley has asserted that it does not own, operate or maintain the Southern Regional Jail, and that Plaintiff has not alleged any other conduct by any City of Beckley employee, representative, or agent in his Complaint. Indeed, as pointed out by the City of Beckley, West Virginia Code § 5F-1-2 provides that the Southern Regional Jail is incorporated and administered by the West Virginia Department of Military Affairs & Public Safety. (ECF No. 36 at 5) Plaintiff had no response to this, except to impermissibly attempt to add the West Virginia Department of Military Affairs & Public Safety as a named defendant by way of his "Amended Complaint." (See ECF No. 50 at 5-6)

Because Plaintiff has failed to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure with respect to the City of Beckley, his Complaint should be dismissed against this Defendant.

Plaintiff's "Negligence" Claim Fails as a Matter of Law:

In "Count 3", Plaintiff appears to only allege common law negligence claims against the Southern Regional Jail, however, throughout his Complaint, he seems to conflate his common law claims with alleged Section 1983 and other constitutional violations. Nevertheless, with respect to the Southern Regional Jail[12], Plaintiff's Section 1983 claim fails because this Defendant is not a

---

[12] Indeed, despite Plaintiff's inappropriate and impermissible modification to his claims, to the extent that he added the West Virginia Department of Military Affairs & Public Safety as named defendant (ECF No. 50 at 5-6), this Court

"person", and such a claim violates the Eleventh Amendment of the U.S. Constitution. See, Preval v. Reno, 203 F.3d 821 (4th Cir. 2000)(unpublished)(finding that the Piedmont Regional Jail is not a "person" under Section 1983); Roach v. Burch, 825 F.Supp. 116, 117 (N.D.W. Va. 1993)(stating that the West Virginia Regional Jail Authority is not a "person" under Section 1983); also see Will v. Michigan Dept. of State Police, 491 U.S. 58, 66, 109 S.Ct. 2304, 2309, 105 L.Ed.2d 45 (1989)(Suits against a state or state agencies for monetary damages are barred by the Eleventh Amendment to the United States Constitution); Webb v. Parsons, 2011 WL 2076419 (S.D.W. Va. May 6, 2011)(finding that the West Virginia Regional Jail Authority, an agency of the State of West Virginia, is immune from suit under the Eleventh Amendment).

Plaintiff further fails to allege that any exception to the Southern Regional Jail's Eleventh Amendment immunity applies herein: (1) Congress has not specifically abrogated Eleventh Amendment immunity for state prison facilities; (2) West Virginia has not waived its sovereign immunity and consented to Plaintiff's suit; and (3) Plaintiff does not name a single Southern Regional Jail employee or official in his Complaint, or in his responsive "Amended Complaint". See, e.g., Canterbury v. W. Reg'l Jail Auth., No. 3:18-cv-1440, 2019 WL 6545328, at *6 (S.D.W. Va. Nov. 7, 2019), report and recommendation adopted by, 2019 WL 6598349 (S.D.W. Va. Dec. 4, 2019) (citing Frew ex rel. Frew v. Hawkins, 540 U.S. 431, 437 (2004); Ex Parte Young, 209 U.S. 123 (1908)); see also Freeland v. Ballard, 6 F. Supp. 3d 683, 694 (S.D.W. Va. 2014)("Pursuant to the Eleventh Amendment, a federal Court may enjoin state officials to conform

---

has previously found that this entity is not a "person" for purposes of Section 1983 claims. See Blake v. Rubenstein, 2016 WL 5660355 (S.D.W. Va. Apr. 5, 2016), report and recommendation adopted by, 2016 WL 5661233, (S.D.W. Va., Sept. 28, 2016). The undersigned notes that Plaintiff also attempted to modify his negligence claim by adding Raleigh County/County Commission of Raleigh County and the City of Beckley in his "Amended Complaint." (ECF No. 50 at 19-20) Although municipalities can be subject to suit in a Section 1983 action, such as a county commission, as noted herein, neither the County Commission of Raleigh County nor the City of Beckley have any authority over the Southern Regional Jail, thus, Plaintiff's attempt to amend his claims concerning the conditions of his confinement and bond as they extend to these entities fails as a matter of law.

their future conduct to federal law, which is distinguishable from a retroactive monetary award paid from State funds."). As Plaintiff was never indicted on the State charges, and not currently subject to any action by the Southern Regional Jail, or threatened for purposes of Eleventh Amendment jurisprudence[13], any amendment to add a jail official would be meritless, therefore, it follows that the Southern Regional Jail is equivocally immune from Plaintiff's suit under the Eleventh Amendment. White v. W. Virginia Dep't of Transportation, No. 1:17-cv-4617, 2018 WL 3732719, at *2 (S.D.W. Va. Aug. 6, 2018).

To the extent that Plaintiff has alleged that the Southern Regional Jail owed him a fiduciary duty or somehow defrauded him (ECF No. 3 at 19), there is no such duty owed to a pretrial detainee under law, but only a duty of care pursuant to the Eighth and Fourteenth Amendments. See, e.g., Whitley v. Albers, 475 U.S. 312, 320 (1986)("prison administrators are charged with the responsibility of ensuring the safety of the prison staff, administrative personnel, and visitors, as well as the "obligation to take reasonable measures to guarantee the safety of the inmates themselves."). In West Virginia, this has been interpreted as a duty of reasonable care, akin to the duty landowners owe to invitees. See McNeal v. United States, 979 F. Supp. 431 (N.D.W. Va. 1997); see also, Burdette v. Burdette, 127 S.E.2d 249 (W. Va. 1962).

Nevertheless, to establish a violation of the Eighth Amendment in the context of a challenge to conditions of confinement, an inmate must allege (1) a "sufficiently serious" deprivation under an objective standard and (2) that prison officials acted with "deliberate indifference" to the inmate's health and safety under a subjective standard. Wilson v. Seiter, 501 U.S. 294, 297-299, 111 S.Ct. 2321, 2323 - 2325, 115 L.Ed.2d 271 (1991); also see King v. Rubenstein, 825 F.3d 206, 218 (4th Cir. 2016)(quoting Strickler v. Waters, 989 F.2d 1375, 1379

---

[13] See McBurney v. Cuccinelli, 616 F.3d 393, 399 (4th Cir. 2010); Waste Mgmt. Holdings, Inc. v. Gilmore, 252 F.3d 316, 330 (4th Cir. 2001).

(4th Cir. 1993))("[T]o make out a *prima facie* case that prison conditions violate the Eighth Amendment, a plaintiff must show both '(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials.' "); Iko v. Shreve, 535 F.3d 225, 239 (4th Cir. 2008)(explaining that the above requirements "spring from the text of the amendment itself; absent intentionality, a condition imposed upon an inmate cannot properly be called 'punishment,' and absent severity, a punishment cannot be called 'cruel and unusual.' ") To satisfy the objective component, Plaintiff must show that the challenged condition caused or constituted an extreme deprivation. De'Lonta v. Angelone, 330 F.3d 630, 634 (4th Cir. 2003). To demonstrate an "extreme deprivation," a plaintiff "must allege a serious or significant physical or emotional injury resulting from the challenged conditions or demonstrate a substantial risk of such serious harm resulting from [his] exposure to the challenged conditions." Odom v. South Carolina Dept. of Corrections, 349 F.3d 765, 770 (4th Cir. 2003); also see Wilson v. Seiter, 501 U.S. at 298, 111 S.Ct. at 2321(A sufficiently serious deprivation occurs when "a prison official's act or omission . . . result[s] in the denial of the minimal civilized measure of life's necessities."); White v. Gregory, 1 F.3d 267, 269 (4th Cir. 1991)("In Strickler, we held that a prisoner must suffer 'serious or significant physical or mental injury' in order to be 'subjected to cruel and unusual punishment within the meaning of the' Eighth Amendment.") To satisfy the subjective component, Plaintiff must demonstrate a "deliberate indifference" to his health and safety by Defendants.[14] In particular, Plaintiff must establish that each Defendant "knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could

---

[14] As noted *supra*, Plaintiff initially charged the Southern Regional Jail with negligence, however, in his Amended Complaint, he charged the West Virginia Department of Military Affairs & Public Safety, Raleigh County, and the City of Beckley with negligence as well, claiming each owed him a "fiduciary duty" and had "done willfully and maliciously giving rise to the claim of fraud" (ECF No. 50 at 20), repeating the same allegations as asserted in his initial complaint.

be drawn that a substantial risk of serious harm exists, and he must also draw the inference." <u>Farmer v. Brennan</u>, 511 U.S. 825, 837, 114 S.Ct. 1970, 1979, 128 L.Ed.2d 811 (1994). Plaintiff in this case must therefore allege and establish that each Defendant was aware of the excessive risk to Plaintiff's health or safety and each Defendant disregarded that risk.

Plaintiff contends that the conditions of his confinement while a pretrial detainee at the Southern Regional Jail were cruel and unusual based on the following: "held in ONE room"; "lights on 24 hrs a day"; "NO soap"; "NO toothpaste"; "NO bed . . . sleeping on the Concrete floor"; "DENIED POSTING BAIL (which at ALL times Plaintiff was able & ready to post)"; and "No recreation as mandated by Federal and/or State law." (ECF No. 3 at 19; ECF No. 50 at 20) Prisoners are entitled to "adequate food, clothing, shelter, sanitation, medical care and personal safety." <u>Wolfish v. Levi</u>, 573 F.2d 118, 125 (2d Cir. 1978), *rev'd on other grounds*, <u>Bell v. Wolfish</u>, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). In <u>Wilson v. Seiter</u>, 501 U.S. 294, 111 S.Ct. 2321, 2327, 115 L.Ed.2d 271 (1991), the Supreme Court held that "some conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise-for example, a low cell temperature at night combined with a failure to issue blankets."

Liberally construing Plaintiff's Complaint and assuming all facts as true, Plaintiff's allegations do not establish an Eighth Amendment violation. To the extent Plaintiff complains of being held in one room with the lights on 24 hours a day and having no bed, having to sleep on the concrete floor, such does not constitute a constitutional violation because there is no allegation that Plaintiff suffered any specific injury nor was Plaintiff deprived of an identifiable human need. <u>Strickler v. Waters</u>, 989 F.2d 1375, 1379-81 (4th Cir. 1993)(complaint of overcrowding and poor

ventilation did not constitute a constitutional violation because inmate did not allege any specific injury as a result of the purported conditions); Hunnewell v. Warden, 19 F.3d 7 (1ˢᵗ Cir. 1994)(unpublished decision)(holding that inmate's claim that "cell lights are on during the night making it difficult to sleep" and "the ventilation system blows dust and fibers into his cell causing him to have headaches and bloody noses" was insufficient to state a claim under the Eighth Amendment); see also Beverati v. Smith, 120 F.3d 500, 504-505, n. 5 (4ᵗʰ Cir. 1997)(finding a six-month deprivation of clean clothing, linen, or bedding did not violate the Eighth Amendment). To the extent Plaintiff complains he was not provided with hygiene supplies during his twelve day stay, specifically, soap and toothpaste, it is well recognized that the short-term denial of hygiene supplies does not rise to the level of an Eighth Amendment violation. See Woods v. United States, 2012 WL 1005010, at *11 (W.D. Va. Mar. 22, 2012)(finding no violation where prisoner alleged that he was deprived of toothbrush, toothpaste, and soap for a maximum of seven days); Eakle v. Grover Rosencrance, 2009 WL 6057260, at *3 (N.D.W. Va. Dec. 4, 2009)(dismissing for failure to state a claim where prisoner alleged that he was denied soap, shampoo, deodorant, and toothpaste, among other conditions); see also, Harris v. Fleming, 839 F.2d 1232, 1234-1235 (7ᵗʰ Cir. 1988)(affirming rejection of constitutional claim for denial of basic human needs despite the fact that the plaintiff "was not provided with toilet paper for five days . . . and that he lacked soap, toothbrush, and toothpaste for ten (10) days," because "[a]lthough [he] experienced considerable unpleasantness, he suffered no physical harm"); Johnson v. Fields, 2017 WL 5505991, at *10 (W.D.N.C. Nov. 16, 2017)("Plaintiff's claim that he was denied a shower and clean clothes for twelve days is insufficient as a matter of law to maintain an Eighth Amendment claim."); DeLoach v. South Carolina Dept. of Corr., 2009 WL 1651452, at * 3-4 (D.S.C. June 11, 2009), aff'd., 355 Fed.Appx. 681 (4ᵗʰ Cir. 2009)(denial of a clean jumpsuit and hygiene packet for a thirty day period

did not constitute a denial of a 'basic need'); Walker v. Dart, 2010 WL 669448, at * 4 (N.D.Ill. Feb. 19, 2010)("Being denied clean clothes for two weeks, though unpleasant, is not a deprivation serious enough to support an Eighth Amendment claim)(collecting cases). Indeed, Plaintiff's inability to engage in recreation also does not rise to an Eighth Amendment violation. See Williams v. Anderson, 2006 WL 709209, at *13 (S.D.W. Va. March 16, 2006)(finding segregated inmate's inability to "exercise, keep personal hygiene items, change clothes or shower, take part in academic and religious programs or telephone family members" did not violate the Eighth Amendment). Finally, the combined conditions of confinement complained of by Plaintiff amounts to nothing more than a "routine discomfort [that] is part of the penalty that criminal offenders pay for their offenses against society." Strickler, 989 F.2d at 1380. The Eighth Amendment "does not mandate comfortable prisons." Rhodes v. Chapman, 452 U.S. at 349, 101 S.Ct. at 2400. "To the extent . . . conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." Id. at 347, 101 S.Ct. 2392; Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995)(citing Hudson v. McMillian, 503 U.S. 1, 9, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992)); Lopez v. Robinson, 914 F.2d 486, 490 (4th Cir. 1990); see also Alberti v. Klevenhagen, 790 F.2d 1220, 1228 (5th Cir. 1986)(the Eighth Amendment does not require "the provision of every amenity needed to avoid mental, physical, and emotional deterioration"). Accordingly, the undersigned recommends that Plaintiff's Eighth Amendment claim challenging his conditions of confinement during his detention at the Southern Regional Jail be dismissed.

        With regard to Plaintiff's claim that somehow the Southern Regional Jail (and ostensibly, the West Virginia Department of Military Affairs & Public Safety, Raleigh County/County Commission of Raleigh County, and the City of Beckley) denied his ability to post bail, it appears that Plaintiff, by his own admission, could have posted bail at any time, but fails to allege how

Defendants interfered with his ability to do so. Indeed, it appears that Plaintiff did post bond, albeit twelve or more days later. (ECF No. 39-7) It would also appear that Plaintiff's alleged twelve-day stay at the Southern Regional Jail was precipitated by his refusal to cooperate with any part of the judicial process, including the bail portion of his hearing. (ECF Nos. 39-3, 39-4) Nevertheless, this Court has recognized that there is no constitutional right to cash money bail. See <u>Salau v. Francis</u>, No. 5:14-cv-24978, 2015 WL 222336, at *4 (S.D.W. Va. Jan. 14, 2015); see also <u>United States v. Salerno</u>, 481 U.S. 739, 752 (1987)("The Eighth Amendment addresses pretrial release by providing merely that '[e]xcessive bail shall not be required,' This Clause, of course, says nothing about whether bail shall be available at all.").

Based on the foregoing, Plaintiff's Section 1983 claim as well as his negligence claim against the Southern Regional Jail, and to the extent he has alleged constitutional violations and/or some negligent act on behalf of Raleigh County/County Commission of Raleigh County and the City of Beckley attributed to the conditions of his confinement and failure to make bail, the undersigned recommends that these claims should be dismissed.

<u>Plaintiff's Section 1986 Claim Fails as a Matter of Law:</u>

With respect to Defendant Scott E. Johnson, Plaintiff's claim is limited to an alleged violation of 42 U.S.C. § 1986 for "failing to stop a conspiracy to deprive Plaintiff of his civil rights" (ECF No. 3 at 15-16, 25, 26) when this Defendant filed a response in opposition to Plaintiff's motion to supplement the record in the West Virginia Supreme Court of Appeals (ECF No. 3-13), resulting in Plaintiff's motion being denied. Plaintiff's Complaint and responsive Amended Complaint add nothing of substance to his claim against this Defendant. It is clear from Plaintiff's pleadings that Defendant Johnson's association with this action is limited to only his filing of a responsive pleading in the West Virginia Supreme Court of Appeals. Defendant

Johnson's conduct is entitled to absolute immunity to Plaintiff's Section 1983 suit, as he was engaged with the judicial phase of the criminal process. See Imbler v. Pachtman, 424 U.S. 409, 430-431, 96 S.Ct. 984, 995, 47 L.Ed.2d 128) (1976)("We hold only that in initiating and in presenting the State's case, the prosecutor is immune from a civil suit for damages under § 1983.").

Alternatively, even if Defendant Johnson did not enjoy absolute immunity, he is nonetheless protected by qualified immunity. Qualified immunity applies to protect government officials from damages liability for performance of discretionary functions when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). In short, Plaintiff's claim against Defendant Johnson simply does not rise to the level of any constitutional violation. Plaintiff only provides "naked assertion[s]" which are verboten pursuant to the jurisprudence espoused under Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) and Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Thus, Plaintiff's claim against this Defendant should be dismissed.

Plaintiff's Section 1985 Claims Fail as a Matter of Law:

With respect to Defendants Bowers, White, Dimlich, Peck, Keller, and Parsons, Plaintiff alleges that they violated 42 U.S.C. § 1985. Section 1985(3) provides:

> If two or more persons in any State or Territory conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or . . . in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

34

Therefore, to state a claim for relief under Section 1985(3), a plaintiff must allege (1) a person's engagement in a conspiracy; (2) for the purpose of depriving, either directly or indirectly, the plaintiff or class of persons of the equal protection of the laws, or of equal privileges or immunities under the laws; (3) the person's act in furtherance of the conspiracy; (4) the plaintiff's injury in his person or property or deprivation of a right or privilege of a citizen of the United States. Simmons v. Poe, 47 F.3d 1370, 1376 (4th Cir. 1995). Allegations specifying "concrete supporting facts" are required to state a claim for relief under Section 1985(3). Conclusory allegations of conspiracy will not suffice. Simmons v. Poe, 47 F.3d at 1377 ("[W]e have specifically rejected section 1985 claims whenever the purported conspiracy is alleged in a merely conclusory manner, in the absence of concrete supporting facts.")

The undersigned finds that Plaintiff has not stated a claim for which relief may be granted under Section 1985(3). Plaintiff merely concludes without specific factual support that each of these Defendants engaged in a conspiracy to deprive him of his right to "Due process and/or possibly violated of any or all of the provisions of 18 U.S.C. §§ 1962(a), (b), (c) or (d), 18 U.S.C. §§ 241, 242 and (42 U.S.C. § 14141)[.]" (ECF No. 3 at 20) With respect to Plaintiff's claims under the criminal provisions pursuant to the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962, the Civil Rights conspiracy laws under 18 U.S.C. §§ 241 and 242, and unlawful conduct of law enforcement agencies pursuant to 42 U.S.C. § 14141 (now 34 U.S.C. § 12601), Plaintiff does not allege any specific facts with respect to any of these Defendants that support any claim for which he would be entitled to relief. Moreover, Plaintiff provides no concrete facts to demonstrate that Defendants came to a mutual understanding or acted jointly or in concert to

deprive Plaintiff of any constitutional right. To that extent, Plaintiff's Complaint is not salvageable even if he was permitted to amend his Complaint in the spirit of <u>Denton v. Hernandez</u>, *supra*.[15]

In spite of Plaintiff's fatally deficient pleadings as they relate to Defendants Dimlich, Peck, and Humphrey, it is noted that "[f]ew doctrines were more solidly established at common law than the immunity of judges from liability for damages for acts committed within their judicial jurisdiction, as this Court recognized when it adopted the doctrine in <u>Bradley v. Fisher</u>, 80 U.S. 335, __ S.Ct. __, 20 L.Ed. 646 (1872)." <u>Imbler v. Patchman</u>, 424 U.S. 409, 419, 96 S.Ct. 984, 990, 47 L.Ed.2d 128 (1976). Judicial immunity does not attach when a judicial officer acts in the clear absence of all jurisdiction. <u>Stump v. Sparkman</u>, 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978); <u>Pressly v. Gregory</u>, 831 F.2d 514, 517 (4th Cir. 1987). The doctrine of judicial immunity, however, "attaches even if the act in question was in excess of [the judge's] authority." <u>Jackson v. Houck</u>, 181 Fed. App'x 372, 372 (4th Cir. 2006) (quoting <u>Mireles v. Waco</u>, 502 U.S. 9, 12-13, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991)). "This immunity applies even when the judge is accused of acting maliciously and corruptly, and it 'is not for the protection or benefit of a malicious or corrupt judge, but for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences." <u>Id</u>. (adopting doctrine of absolute judicial immunity in Section 1983 actions) (internal citation omitted). Based upon Plaintiff's allegations against Raleigh County Circuit Court Judge Dimlich and Raleigh County Magistrates Peck and Humphrey, the undersigned finds that they are absolutely immune from suit. Plaintiff has argued these Defendants, along with several others, violated his constitutional rights simply by presiding over Plaintiff's criminal case. As stated above, judges have absolute immunity for their judicial acts even when the judge is accused of acting maliciously

[15] Again, as noted *supra*, Plaintiff did, without leave of this Court, 'amended' his complaint without alleging any further specific facts with respect to any of the Defendants named herein.

and corruptly. Accordingly, the undersigned respectfully recommends that Plaintiff's claims be dismissed because Defendants Dimlich, Peck, and Humphrey are entitled to absolute immunity.

<u>Plaintiff's Section 1983 Claims for "Unreasonable Search and Seizure, Unlawful Taking, Personal Injury, False Imprisonment, Official Oppression and Cruel and Unusual Punishment" Fail as a Matter of Law:</u>[16]

Plaintiff alleges that Defendant Bowers "while acting under color of law, violated Plaintiff's, constitutional protected rights by unreasonable search and seizure, unlawful taking, false imprisonment, official oppression and cruel and unusual punishment, on or about 1 FEBRUARY, 2018." (ECF No. 3 at 16) Plaintiff's Complaint states that Defendant Bowers stopped Plaintiff while he was operating a vehicle on a West Virginia public highway; upon Defendant Bowers' request for his driver's license and registration, Plaintiff presented a homemade "Traveler I.D." issued by "The Pennsylvania Republic" (ECF No. 3-4) and advised his "Pennsylvania Traveler plates" were registered through a UCC Financing Statement as proof of registration (ECF No. 3-8). (See, ECF No. 3 at 11-12) Nevertheless, Defendant Bowers "executed a criminal complaint bringing several false charges against Plaintiff, including Fraud (a felony), obstructing an officer, fictitious ID and dangerous property (blown light bulb)." (<u>Id</u>. at 12) Plaintiff further alleged that "as a direct and proximate result" of Defendant Bowers "false, unprovoked, unjustified, and unconstitutional arrest, Plaintiff suffered severe injuries[.]" (<u>Id</u>. at 17)

With respect to Defendant White, Plaintiff specifically alleges that he executed a criminal complaint based on the same "false" statements as the initial complaint (<u>Id</u>. at 14, 20, 21), which was a contributing factor in Plaintiff's claim for intentional infliction of emotional distress (<u>Id</u>. at 22-23).

---

[16] The undersigned addresses Plaintiff's claims of false imprisonment and his Eighth Amendment claims as they relate to "cruel and unusual punishment" separately, *infra*.

As noted *supra*, Section 1983 provides a remedy for violations of all rights, privileges, or immunities secured by the U.S. Constitution and laws. A plaintiff's claim for false arrest or false imprisonment ceases once plaintiff is detained pursuant to legal process, and at this point, plaintiff's claim becomes a claim of malicious prosecution. See Wallace v. Kato, 549 U.S. 384, 388-89, 127 S.Ct. 1091, 1100, 166 L.Ed.2d 973 (2007) ("Reflective of the fact that false imprisonment consists of detention without legal process, a false imprisonment ends once the victim becomes held pursuant to such process - - when, for example, he is bound over by a magistrate or arraigned on charges . . . Thereafter, unlawful detention forms part of the damages for the entirely distinct tort of malicious prosecution, which remedies detention accompanied, not by absence of legal process, but by wrongful institution of legal process.")(internal citations omitted). In the context of a claim for malicious prosecution, the Fourth Circuit recognizes that an appropriate Section 1983 claim is "a claim founded on a Fourth Amendment seizure that incorporates elements of the analogous common law tort of malicious prosecution." Lambert v. Williams, 223 F.3d 257, 262 (4th Cir. 2000), *cert. denied*, 531 U.S. 1130, 121 S.Ct. 889, 148 L.Ed.2d 797 (2001)(citing Brooks v. City of Winston-Salem, 85 F.3d 178, 183 (4th Cir. 1996)); see also Evans v. Chalmers, 703 F.3d 636, 647 (4th Cir. 2012)(finding that a Section 1983 malicious prosecution claim "is properly understood as a Fourth Amendment claim for unreasonable seizure which incorporates certain elements of the common law tort."). To state a Section 1983 claim for a seizure in violation of the Fourth Amendment, the defendant must have "seized plaintiff pursuant to legal process that was not supported by probable cause and the criminal proceeding [must] have terminated in plaintiff's favor." Burrell v. Virginia, 395 F.3d 508, 514 (4th Cir. 2005)(citing Brooks, 85 F.3d at 183-85)). Therefore, Plaintiff's claims against Defendant Bowers, and/or Defendant White, to the extent that Plaintiff was arrested on a false criminal complaint, are

governed by the Fourth Amendment. <u>Wilson v. Kittoe</u>, 337 F.3d 392 (4th Cir. 2003); <u>Malley v. Briggs</u>, 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).

As an initial matter, to the extent that Plaintiff is alleging Defendant Bowers employed excessive force to affect his arrest, it is well known that the Fourth Amendment guarantees citizens the right to be free from unreasonable seizures, which bars the use of excessive force by law enforcement officers to effectuate a seizure. <u>Jones v. Buchanan</u>, 325 F.3d 520, 527 (4th Cir. 2003) A claim that law enforcement officials used excessive force in the course of making an arrest or other seizure of a person is analyzed under an "objective reasonableness" standard. <u>Id.</u> (quoting <u>Graham v. O'Connor</u>, 490 U.S. 386, 399, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)). In determining what is reasonable, a court must carefully balance " ' the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." <u>Graham</u>, 490 U.S. at 396, 109 S.Ct. 1865 (quoting <u>Tennessee v. Garner</u>, 471 U.S. 1, 8, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985)). That balancing act is accomplished by focusing on the facts and circumstances of each case, taking into account "[1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight." <u>Yates v. Terry</u>, 817 F.3d 877, 885 (4th Cir. 2016) (quoting <u>Graham</u>, 490 U.S. at 396, 109 S.Ct. 1865) "The extent of the plaintiff's injury is also a relevant consideration." <u>Jones v. Buchanan</u>, 325 F.3d 520 (4th Cir. 2003) (citing <u>Rowland v. Perry</u>, 41 F.3d 167, 174 (4th Cir. 1994)).

A court must consider the reasonableness of the force employed " 'in full context, with an eye toward the proportionality of the force in light of all the circumstances.' " <u>Smith v. Ray</u>, 781 F.3d 95, 101 (4th Cir. 2015) (quoting <u>Waterman v. Batton</u>, 393 F.3d 471, 481 (4th Cir. 2005)). The Court of Appeals for the Fourth Circuit has recognized that " 'police officers are often forced to

make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—[and] we take care to consider the facts from the perspective of a reasonable officer on the scene, and avoid judging the officer's conduct with the 20/20 vision of hindsight.' " Cooper v. Sheehan, 735 F.3d 153, 158–159 (4th Cir. 2013) (quoting Clem v. Corbeau, 284 F.3d 543, 550 (4th Cir. 2002)).

Plaintiff only provides a conclusory statement that Defendant Bowers caused him "severe injuries" without any further factual support for this claim. Indeed, the video recording Plaintiff provided to this Court did not show any force employed by this Defendant whatsoever, but actually demonstrated that Plaintiff was arrested without incident – Plaintiff was cooperative during the traffic stop and eventual arrest. There is no indication that Plaintiff fled from law enforcement or that he was arrested for anything other than non-violent offenses. Plaintiff does not allege that he was in need of medical assistance or that such assistance was denied to him during his incarceration at the Southern Regional Jail. Instead, Plaintiff only provides "naked assertion[s]" prohibited under the jurisprudence espoused under Twombly, Ashcroft, and their progeny. Thus, Plaintiff's claims of excessive force and/or personal injury against this Defendant should be dismissed.

As to the reasonableness of Plaintiff's seizure of his person and vehicle, West Virginia requires nonresidents to have in his immediate possession a valid driver's license issued by his or her home state or country in order to lawfully operate a motor vehicle. W. Va. Code §§ 17B-2-1, 17B-2-2. Operating a vehicle without a license is a misdemeanor. Id. Manufacturing, forging, altering, or counterfeiting vehicle registration items is a felony. W. Va. Code § 17A-9-4. Displaying a fictitious nonoperators identification is punishable by jail. W. Va. Code §§ 17B-4-1, 17B-5-1. Illegally hindering a law enforcement officer in the completion of his duties is punishable by jail. W. Va. Code § 61-5-17.

Even a cursory review of Plaintiff's Complaint shows that he is not a citizen of West Virginia, however, he was operating a motor vehicle in West Virginia without a valid driver's license issued by Pennsylvania, and that during the completion of Defendant Bowers' lawful duties, Plaintiff presented a fictitious identification that he represented as a valid license issued by Pennsylvania. Plaintiff further admits in his Complaint that he attached the "Pennsylvania Traveler plates" to his vehicle, which is "classified as Consumer Goods, per UCC 9-109, and also properly de-registered in accordance with title 75 Pa.C.S.A. § 1303." (See, ECF No. 3 at 12; ECF No. 3-8) Indeed, the video recording of this seizure, provided by Plaintiff as an exhibit to his "Amended Complaint", demonstrates that Defendant Bowers was aware that Plaintiff had committed or was in the process of committing arrestable offenses, despite Plaintiff's continued reassurances that the fabricated documentation complied with Pennsylvania and West Virginia law. In short, probable cause existed for Plaintiff's underlying arrest. Moreover, Plaintiff fails to allege any facts that would support an alternative conclusion.

To the extent that Plaintiff alleged that these Defendants do not enjoy any immunity, it is noted that "[q]ualified immunity shields government officials from civil liability insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Hill v. Crum, 727 F.3d 312, 321 (4th Cir. 2013)(internal quotation marks omitted). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier v. Katz, 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); see Smith v. Reddy, 101 F.3d 351, 355 (4th Cir. 1996)("If the right was not clearly established at the relevant time or if a reasonable officer might not have known his or her conduct violated that right, the officer is entitled to immunity.").

Qualified immunity protects " 'all but the plainly incompetent or those who knowingly violate the law.' " White v. Pauley, 137 S.Ct. 548, 551, 196 L.Ed.2d 463, 468 (2017) (citing, in part, Mullenix v. Luna, 136 S.Ct. 305, 308, 193 L.Ed.2d 255 (2015) (quoting Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)).

Courts have established qualified immunity for government officials in consideration of a number of factors, including: the substantial cost of litigation against government officials; the distraction of government officials from their public responsibilities; and the disincentive to responsible and capable persons to accept government positions if there is no protection against suits accusing them of misconduct in the performance of their public duties. Government officials performing discretionary functions are generally protected from civil damages liability if their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231, 129 S.Ct. 808, 815, 172 L.Ed.2d 565 (2009)(quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)).

In determining the validity of a qualified immunity defense, the Court should be guided by a two-pronged test: (1) whether the facts viewed in the light most favorable to the Plaintiff establish a deprivation of an actual constitutional right; and (2) whether that right was clearly established at the time of the purported violation. Id. The sequence of the steps is immaterial following Pearson. The Court may exercise discretion in deciding which of the two prongs "should be addressed first in light of the circumstances in the particular case at hand." Id. at 818. "A constitutional right is 'clearly established' when its contours are sufficiently clear that a reasonable official would understand that what he is doing violates that right." Cooper v. Sheehan, 735 F.3d 153, 158 (4th Cir. 2013) (internal quotation marks and citations omitted).

The theme repeated from this jurisprudence is "reasonableness", and therefore, the critical question is whether Defendant Bowers' conduct was "reasonable." In order for the execution of a criminal complaint to violate the clearly established right to be free from unreasonable arrest, it must be "so lacking in indicia of probable cause as to render official belief in its existence unreasonable." Malley, 475 U.S. at 344-345. In this case, based on the facts presented in Plaintiff's Complaint and Exhibits, probable cause existed for his arrest, as Plaintiff clearly violated the aforementioned traffic provisions while in the presence of Defendant Bowers. Despite Plaintiff's assertion that his homemade driver's license and plates somehow complied with West Virginia law, he has not demonstrated a constitutional right to bear a fabricated license and registration. Therefore, Plaintiff's arrest was not the product of "plainly incompetent" or in "knowing violation of the law", therefore, these Defendants are further protected under qualified immunity. White, 137 S.Ct. at 551.

Plaintiff's Claims of False Arrest and False Imprisonment are Time-Barred:

A federal court sitting in diversity must apply the "substantive" law of its forum state. Gasperini v. Ctr. For Humanities, 518 U.S. 415, 426-427, 116 S.Ct. 2211, 2219-2220, 135 L.Ed.2d 659 (1996)(citing and quoting Erie R.R. Co. v. Tompkins, 304 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1938)). A state's statute of limitations for a state-law claim is substantive law. Walker v. Armco Steel Corp., 446 U.S. 740, 745, 100 S.Ct. 1978, 1982, 64 L.Ed.2d 659 (1980); Guaranty Trust Co. v. York, 326 U.S. 99, 110-111, 65 S.Ct. 1464, 1470, 89 L.Ed. 2079 (1945).

"[E]ven though the limitation period is borrowed from state law, the question of when a cause of action accrues under 42 U.S.C. § 1983 remains one of federal law." Nasim v. Warden, Maryland House of Correction, 64 F.3d 951, 955 (4th Cir. 1995)(en banc)(emphasis in original)(citing Cox v. Stanton, 529 F.2d 47, 50 (4th Cir. 1975)). "[T]o determine the date of accrual

for a particular § 1983 claim, a court must look to the common-law tort that is most analogous to the plaintiff's § 1983 claim and determine the date on which the limitations period for this most analogous tort claim would begin to run." Owens v. Baltimore City State's Attorneys Office, 767 F.3d 379, 389 (4th Cir. 2014)(quoting Wallace v. Kato, 549 U.S. 384, 388, 127 S.Ct. 1091, 1100, 166 L.Ed.2d 973 (2007)), *cert. denied sub nom*, Baltimore City Police Dep't v. Owens, 135 S. Ct. 1893 (2015). Based on the accrual of typical common-law tort claims, " 'it is the standard rule that accrual [for § 1983 claims] occurs when the plaintiff has a complete and present cause of action' against a defendant—that is, when the plaintiff knows or has reason to know of his injury." Owens, 767 F.3d at 389 (quoting Wallace, 549 U.S. at 388). However, it is important to recognize that the "standard rule" allows a few exceptions: for example, because they are analogous to the tort of false imprisonment, section 1983 claims for wrongful arrest do not accrue until the individual is released or his detention becomes lawful. Wallace, 549 U.S. at 389-392 (holding that "false imprisonment consists of detention without legal process, [and] a false imprisonment ends once the victim becomes held pursuant to such process," and that false imprisonment claim brought by unlawfully arrested plaintiff accrued "when [plaintiff] appeared before the examining magistrate and was bound over for trial," because his detention then became legal)(emphasis in original)[17]; The applicable period of limitations for a claim of false imprisonment is one-year. Wilt v. State Auto. Mut. Ins. Co., 506 S.E.2d 608, 613 (W. Va. 1998); also see Snodgrass v. Sisson's Mobile Home Sales, Inc., 244 S.E.2d 321 (W. Va. 1978).

In this case, Plaintiff alleges that on February 1, 2018, Defendant Bowers arrested him and

---

[17] The Supreme Court noted that "[f]alse arrest and false imprisonment overlap; the former is a species of the later." Wallace, 127 S.Ct. at 1095. See also, Magwood v. Streetman, 2016 WL 5334678, at *5 (D.S.C. Aug. 15, 2016)(explaining that false imprisonment consists of detention without legal process, which ends once the victim becomes held pursuant to such process); Smith v. Allred, 2016 WL 1274593, at * 8 (S.D.W. Va. March 31, 2016)(Copenhaver, J.)("[S]ection 1983 claims for wrongful arrest do not accrue until the individual is released or his detention becomes lawful.").

"false[ly]" imprisoned him. (ECF No. 3 at 16) Plaintiff further alleged that he spent approximately twelve days as a pretrial detainee at the Southern Regional Jail. (Id. at 19) There is no dispute that Plaintiff was released on bond on February 14, 2018. (ECF No. 39-7) Thus, it is clear that Plaintiff's Section 1983 claims for false arrest and false imprisonment accrued when he possessed sufficient facts about the harm done to him that reasonable inquiry would have revealed his cause of action, that is to say, February 1, 2018 and February 14, 2018, respectively. Nasim, 64 F.3d at 955. Given that Plaintiff did not file this civil action until January 7, 2020, more than one year after the alleged harm, and more than a year after the expiration of the one-year statute of limitations, Plaintiff's Complaint as it pertains to these claims should be dismissed with prejudice.

Plaintiff's Claims Against Raleigh County Fail as a Matter of Law:

As he alleged with the City of Beckley, Plaintiff alleged that Raleigh County[18] is "responsible for the appointment, training, supervision and conduct of all personnel, including those working at the SRJ . . . through it's policymakers, chief policy makers, employees, agents, representatives, and/or law enforcement . . . ." (ECF No. 3 at 5) However, as discussed *supra*, this Defendant has no ownership or control or administration authority over the Southern Regional Jail, as that resides with the West Virginia Department of Military Affairs & Public Safety, which is undisputed, therefore, to this extent, Plaintiff has failed to state a claim upon which relief can be granted against Raleigh County and those claims should be dismissed against this Defendant.

---

[18] In response to Defendant Raleigh County's argument that it is not a legal entity subject to suit, and that the County Commission is the appropriate party pursuant to W. Va. Code § 7-1-1 (ECF No. 47 at 5-6), Plaintiff simply added "Thee County Commission of Raleigh County" in his Amended Complaint and alleged it was responsible for the "appointment, training, supervision and conduct of all personnel, including those working at the SRJ, Prosecutor's office, and Court House, County[.]" (ECF No. 50 at 4-5) Even construing Plaintiff's pleadings liberally, Plaintiff's claims against Raleigh County/County Commission of Raleigh County fail as a matter of law, as discussed *infra*.

With regard to Plaintiff's Section 1983 claims, as noted *supra*, Raleigh County is not a "person" subject to such suits.[19] L.A. County v. Humphries, 562 U.S. 29, 34, 131 S.Ct. 447, 451, 178 L.Ed.2d 460 (2010). To the extent that Plaintiff alleges a claim against Defendant Raleigh County for vicarious liability for constitutional violations, no such legal theory exists. Id. at 35 (quoting Monell, 436 U.S. at 690). Nevertheless, in order to prove a Section 1983 claim against a municipality, a plaintiff must prove that "action pursuant to official municipal policy" caused his injury. Monell, 436 U.S. at 691, 694. Thus, in order to maintain a Section 1983 action, a plaintiff must plead "(1) the existence of an official policy or custom; (2) that the policy or custom is fairly attributable to the municipality; and (3) that the policy or custom proximately caused the deprivation of a constitutional right." Alexander v. City of Greensboro, 762 F.Supp.2d 764, 781 (M.D.N.C. 2011)(quoting Pettiford v. City of Greensboro, 556 F.Supp.2d 512, 530 (M.D.N.C. 2008)); see also Jordan ex. rel Jordan v. Jackson, 15 F.3d 333, 338 (4th Cir. 1994).

The Fourth Circuit has recognized that "[a] policy or custom for which a municipality may be held liable can arise in four ways: (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that 'manifest[s] deliberate indifference to the rights of citizens'; or (4) through a practice that is so 'persistent and widespread' as to constitute 'a custom or usage with the force of law.' " Lytle v. Doyle, 326 F.3d 463, 471 (4th Cir. 2003)(quoting Carter v. Morris, 164 F.3d 215, 217 (4th Cir.1999)). Such customs may be attributed to a local government if the duration and frequency of the practices rise to a level so that the

---

[19] Regarding Plaintiff's attempt to add a new defendant, the County Commission of Raleigh County, as he attempted with the West Virginia Department of Military Affairs & Public Safety, discussed *supra*, and thereby charges the County Commission with negligence and breach of fiduciary duty during his detention at the Southern Regional Jail, Plaintiff alleges no factual allegations against this potential defendant, only the same "labels and conclusions" prohibited under Iqbal and Twombly.

governing body may be deemed to have constructive knowledge that the practices have become customary among its employees. Spell v. McDaniel, 824 F.2d 1380, 1386 (4th Cir. 1987).

Plaintiff only alleges conclusory allegations in support of his Section 1983 claims against Raleigh County, and fails to allege any factual support for his claims concerning any policy or custom, written or otherwise, any acts of a final policymaking authority, or specify what failures to train or otherwise, let alone identify any custom or usage practices. Indeed, the only reference Plaintiff makes to any "policy" is the copy of an article he attached to his Amended Complaint, *supra*. (ECF No. 50-4 at 14) It is difficult to fathom how this article is a municipal policy, custom or practice envisioned by the Fourth Circuit's jurisprudence, aside from the fact that it appears to have been published long after the events Plaintiff complains of in his Complaint.

Moreover, Raleigh County/County Commission of Raleigh County is immune from Plaintiff's suit pursuant to the Governmental Tort Claims and Insurance Reform Act. W. Va. Code § 29-12A-1, *et seq*.[20] This Act provides that "a political subdivision is not liable in damages in a civil action for injury, death, or loss to persons or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." W. Va. Code § 29-12A-4. A political subdivision is defined as "any county commission, municipality and . . . any public body charged by law with the performance of a government function and whose jurisdiction is coextensive with one or more counties, cities or towns[.]" W. Va. Code § 29-12A-3(c). Most significantly, the immunity of political subdivisions yields **_only_** to "negligence-based acts or functions." See W. Va. Code § 29-12A-4(c); see also Kelley v. City of Williamson, 655 S.E.2d 528, 535 (W. Va. 2007)(discussing

---

[20] Under this Act, Defendants Keller and Parsons also enjoy the protections afforded under this Act, which also conveys several specific immunities while acting within the scope of employment including judicial, quasi-judicial or prosecutorial functions and the execution or enforcement of the lawful orders of any court. See W. Va. Code § 29-12A-5(a).

Mallamo v. Town of Rivesville, 477 S.E.2d 525 (W. Va. 1996))(*per curiam*); Byndon v. Pugh, 350 F. Supp. 3d 495, 511 (N.D.W. Va. Oct. 4, 2018)("this intentional tort claim against the City should be dismissed since the law does not allow political subdivisions to be held liable for 'intentional malfeasance' on the part of their employees."); Webb v. Raleigh Cty. Sheriff's Dep't, 761 F. Supp. 2d 378, 394 (S.D.W. Va. Dec. 28, 2010)(Berger, J.)("To the extent the Raleigh County Commission may only be held liable for the negligent acts of its employees, the intentional state torts . . . are dismissed as to the Raleigh County Commission.")

As Plaintiff has repeatedly and explicitly alleged throughout his Complaint that all Defendants herein acted in "willful and wanton, malicious, and in blatant and intentional disregard for the rights owed to" him, Plaintiff's claims as they relate to Raleigh County/County Commission of Raleigh County and for that matter, as they also relate to the City of Beckley, should be dismissed because the Act does not allow political subdivisions to be held liable for intentional torts of their employees.[21]

Plaintiff's Claims of Malicious Prosecution Fail as a Matter of Law:

To the extent Plaintiff is asserting a claim of malicious prosecution, the undersigned finds that he has failed to state a claim. The Fourth Circuit has stated that "there is no such thing as a § 1983 malicious prosecution claim" because Section 1983 "is not itself a source of substantive rights . . . " Lambert v. Williams, 223 F.3d 257, 262 (4th Cir. 2000), *cert. denied*, 531 U.S. 1130, 121 S.Ct. 889, 148 L.Ed.2d 797 (2001); Baker v. McCollan, 443 U.S. 137, 144, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979). In the context of a claim for malicious prosecution, the Fourth Circuit recognizes that an appropriate Section 1983 claim is "a claim founded on a Fourth Amendment

---

[21] Plaintiff's claims further fail against these Defendants, particularly where he does not bother to identify which County or City employees, agents or representatives thereof committed any of the alleged acts of misconduct as asserted in his Complaint. None of the individual Defendants named herein appear to be employees of either political subdivision.

seizure that incorporates elements of the analogous common law tort of malicious prosecution."

Lambert, 223 F.3d at 262 (citing Brooks v. City of Winston-Salem, 85 F.3d 178, 183 (4th Cir.

1996)). Furthermore, the United States Supreme Court recently recognized an individual's Fourth

Amendment right to be free from unreasonable seizure continues beyond legal process so as to

allow a malicious prosecution claim based upon the Fourth Amendment. Manuel v. City of Joliet,

___ U.S. ___, 137 S.Ct. 911, 197 L.Ed.2d 312 (2017). To state a Section 1983 malicious

prosecution claim for a seizure in violation of the Fourth Amendment, the defendant must have

"seized plaintiff pursuant to legal process that was *not supported by probable cause* and the

criminal proceeding [must] have terminated in plaintiff's favor." Burrell v. Virginia, 395 F.3d 508,

514 (4th Cir. 2005)(citing Brooks, 85 F.3d at 183-85)) (emphasis added). As determined *supra*,

Plaintiff's arrest was clearly supported by probable cause, accordingly, his claim for malicious

prosecution fails.[22]

In any event, with respect to Defendants Keller and Parsons, it is known that prosecutors

have absolute immunity for activities performed as "an officer of the court" if the conduct at issue

is closely associated with the judicial phase of the criminal process. Van de Kamp v. Goldstein,

---

[22] To the extent that Defendants Raleigh County, Keller, and Parsons have argued that Plaintiff's claim for malicious prosecution is time-barred because he failed to bring his claims within one year of the State criminal proceedings having not progressed beyond the February 2018 (ECF No. 47 at 17-19), it is noted that a plaintiff's claim for false arrest or false imprisonment ceases once plaintiff is detained pursuant to legal process, and at this point, plaintiff's claim becomes a claim of malicious prosecution. See Wallace, 549 U.S. at 388-389, 127 S.Ct. at 1091("Reflective of the fact that false imprisonment consists of detention without legal process, a false imprisonment ends once the victim becomes held pursuant to such process - - when, for example, he is bound over by a magistrate or arraigned on charges . . . Thereafter, unlawful detention forms part of the damages for the entirely distinct tort of malicious prosecution, which remedies detention accompanied, not by absence of legal process, but by wrongful institution of legal process.")(internal citations omitted). **Error! Main Document Only.**A Section 1983 claim for malicious prosecution accrues when the prosecution has terminated in Plaintiff's favor. Id. at 1097; see also Albright v. Oliver, 510 U.S. 266, 280, 114 S.Ct. 807, 816, 127 L.Ed.2d 114 (1994)(J. Ginsburg, concurring)(Stating that the limitation period for a malicious prosecution claim should begin to run upon *dismissal* of the criminal charges, not at the start of the state procedures.)(emphasis added). With regard to Plaintiff's criminal charges, the undersigned notes that they were not dismissed until July 18, 2019 (see fn. 20, *infra*), therefore, it would appear that Plaintiff's claim for malicious prosecution, had it **_not_** been based upon probable cause, was filed timely. Regardless, this claim fails as a matter of law for the reasons set forth *supra*.

555 U.S. 335, 341 - 343, 129 S.Ct. 855, 860 - 862, 172 L.Ed.2d 706 (2009). In determining whether a prosecutor is entitled to absolute immunity, the Court must apply the "functional approach" examining the nature of the function performed. Id., 555 U.S. at 342, 129 S.Ct. at 861. It is well established that prosecutors are absolutely immune "for their conduct in initiating a prosecution and in presenting the State's case, insofar as that conduct is 'intimately associated with the judicial phase of the criminal process.' " Burns v. Reed, 500 U.S. 478, 486, 111 S.Ct. 1934, 1939, 114 L.Ed.2d 547 (1991) (quoting Imbler v. Pachtman, 424 U.S. 409, 430-431, 96 S.Ct. 984, 995, 47 L.Ed.2d 128) (1976). Further, absolute immunity extends to "actions preliminary to the initiation of a prosecution and actions apart from the courtroom." Buckley v. Fitzsimmons, 509 U.S. 259, 272, 113 S.Ct. 2606, 2615, 125 L.Ed.2d 209 (1993) (quoting Imbler, 424 U.S. at 431, 96 S.Ct. at 995 - 996). A prosecutor acts as an advocate or "officer of the court" when performing tasks, such as (1) initiating a judicial proceeding, (2) presenting evidence in support of a search warrant application, (3) conducting a criminal trial, bond hearing, grand jury proceeding or pre-trial hearing, (4) engaging in "an out-of-court effort to control the presentation of [a] witness' testimony," and (5) making a "professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial or before the grand jury after a decision to seek an indictment has been made." Buckley, 509 U.S. at 272, 113 S.Ct. at 2615 (quoting Imbler, 424 U.S. at 431, 96 S.Ct. at 995 - 996); Van de Kamp, 555 U.S. at 434, 129 S.Ct. at 861; Dababnah v. Keller-Burnside, 208 F.3d 467, 471 - 472 (4th Cir. 2000) (stating that "numerous courts have found prosecutors absolutely immune when undertaking [extradition proceedings].")

Furthermore, a prosecutor is entitled to absolute immunity even if he or she "acted with an improper state of mind or improper motive." Shmueli v. City of New York, 424 F.3d 231, 237 (2nd Cir. 2005); also see Smith v. McCarthy, 349 Fed.Appx. 851, 859 (4th Cir. 2009), cert. denied, 562

U.S. 829, 131 S.Ct. 81, 178 L.Ed.2d 26 (2010); <u>Brown v. Daniel</u>, 230 F.3d 1351 (4th Cir. 2000)

("[T]o the extent [plaintiff] alleges that the prosecutors engaged in misconduct during the

prosecution of this case . . ., the prosecutors are absolutely immune."). Thus, prosecutors are

entitled to absolute immunity for withholding materially exculpatory evidence, and knowingly

presenting perjured testimony or false or misleading evidence to the Court or grand jury. <u>Burns</u>,

500 U.S. at 490-92, 111 S.Ct., at 1941-42 ("A state prosecuting attorney is absolutely immune

from liability for damages under § 1983 for participating in a probable-cause hearing . . .."); <u>Imbler</u>,

424 U.S. at 422, 96 S.Ct. 984 at 991 (citing <u>Yaselli v. Goff</u>, 275 U.S. 503, 48 S.Ct. 155, 72 L.Ed.

395 (1927)) (finding prosecutor entitled to absolute immunity for allegations that he "maliciously

and without probable cause procured plaintiff's grand jury indictment by the willful introduction

of false and misleading evidence."); <u>also see</u> <u>Brown v. Daniel</u>, 230 F.3d at 1352; <u>Lyles v. Sparks</u>,

79 F.3d 372, 377 (4th Cir. 1996); <u>Carter v. Burch</u>, 34 F.3d 257, 263 (4th Cir. 1994), <u>cert. denied</u>,

513 U.S. 1150, 115 S.Ct. 1101, 130 L.Ed2d 1068 (1995). Although prosecutors may be entitled to

absolute immunity, prosecutors are subject to criminal and professional sanctions for prosecutorial

abuses. <u>Imbler</u>, 424 U.S. at 429, 96 S.Ct. at 994; <u>Malley v. Briggs</u>, 475 U.S. 335, 343, n. 5, 106

S.Ct. 1092, 89 L.Ed.2d 271 (1986). It is well recognized that "[a]bsolute prosecutorial immunity

'is not grounded in any special esteem for those who perform these functions, and certainly not

from a desire to shield abuses of office, but because any lesser degree of immunity could impair

the judicial process itself.' " <u>Dababnah</u>, 208 F.3d at 471 (quoting <u>Kalina v. Fletcher</u>, 522 U.S. 118,

127, 118 S.Ct. 502, 139 L.Ed.2d 471 (1997)). The <u>Imbler</u> Court determined the importance of

protecting the integrity of the prosecutor's office and the judicial system outweighs the desire to

afford civil redress to a wronged defendant. <u>Imbler</u>, 424 U.S. at 427 - 429, 96 S.Ct. at 993 - 994.

A prosecutor, however, is not entitled to absolute immunity for "investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings." Buckley, 509 U.S. at 273, 113 S.Ct. at 2615 (citing Burns, 500 U.S. at 491, 11 S.Ct. at 1941-42). Thus, a prosecutor is only entitled to qualified immunity for administrative actions or investigative functions not related to trial preparation, such as holding a press conference, engaging in investigative activity prior to the establishment of probable cause to arrest, providing police officers with legal advice during the investigative phase, or acting as a complaining witness in support of a warrant application. Id.; also see Van de Kamp, 555 U.S. at 342 - 343, 129 S.Ct. at 861. The Supreme Court has explained as follows:

> There is a difference between the advocate's role in evaluating evidence and interviewing witnesses as he prepares for trial, on the one hand, and the detective's role in searching for clues and corroboration that might give him probable cause to recommend that a suspect be arrested, on the other hand. When a prosecutor performs the investigative functions normally performed by a detective or police officer, it is "neither appropriate nor justifiable that, for the same act, immunity should protect the one and not the other. Thus, if a prosecutor plans and executes a raid on a suspected weapons cache, he "has no greater claim to complete immunity than activities of police officers allegedly acting under his direction."

Buckley, 509 U.S. at 273, 113 S.Ct. at 2616 (internal citations omitted). Thus, a prosecutor does not have absolute immunity for a claim that he or she fabricated evidence during the preliminary investigation of an unsolved crime. Id., 509 U.S. at 275, 113 S.Ct. at 2616 - 2617.

In the instant case, Plaintiff does not identify what role Defendants Keller and Parsons had played in terms of violating his constitutional rights and other statutory provisions other than alluding to their involvement in the prosecution of Plaintiff's criminal case. To that extent, these Defendants would be entitled to absolute prosecutorial immunity from Plaintiff's Section 1983 claims concerning any decision they made concerning the prosecution of Plaintiff's State charges

pursuant to <u>Imbler</u>.[23] Even assuming *arguendo* that these Defendants acted outside of their prosecutorial functions, they would be entitled to qualified immunity. In sum, Plaintiff's claims against Defendants Keller and Parsons simply do not rise to the level of any constitutional violation, because he fails to allege any factual support for his claims that would survive scrutiny under the <u>Iqbal</u> and <u>Twombly</u> heightened pleading standard, *supra*. Thus, Plaintiff's claim against these Defendants should be dismissed.[24]

<u>Plaintiff's Claim of Abuse of Process is Time-Barred:</u>

Plaintiff has alleged that Defendants Bowers, White, Dimlich, Peck, Humphrey, Keller and Parsons filed a "false" criminal complaint and "attempted prosecution(s) as a "willful, malicious, and/or intentional abuse or misuse of lawful process", and thus generally charges these Defendants with "abuse of process." (ECF No. 3 at 23-25) Under the auspices of the pertinent legal authority, discussed *supra*, it follows that the statute of limitations on Plaintiff's abuse of process claim is governed West Virginia law. "Generally, abuse of process consists of the willful or malicious misuse or misapplication of lawfully issued process to accomplish some purpose not intended or warranted by that process." Syl. Pt. 3, <u>Willaimson v. Harden</u>, 585 S.E.2d 369, 370 (W. Va. 2003); <u>Preiser v. MacQueen</u>, 352 S.E.2d 22 (W. Va. 1985). "[A] cause of action for abuse of process has been generally held to accrue, and the statue of limitations to commence to run, from the termination of the acts which constitute the abuse complained of, and not from the completion of

---

[23] As pointed out by Defendants Johnson, Keller, and Parsons, this Court has previously determined examined the actions of Defendant Keller in a similar case, ultimately finding she was entitled to prosecutorial immunity. See <u>Collins v. Keller</u>, No. 5:17-cv-1330, 2018 WL 4659339 (S.D.W. Va. Sept. 28, 2018)(Berger, J.)

[24] Plaintiff has also asserted to an extent that Defendants Dimlich, Peck and Humphrey while "acting under color of law, filed a criminal complaint against Plaintiff and initiated the prosecution of Plaintiff on various false charges", thus contributing to an "abuse of process" interfering with Plaintiff's ability to travel to his home or to report to a movie set. (ECF No. 3 at 23-25) It is clear that Plaintiff confuses or conflates the roles of judges with prosecutors and law enforcement officers, as judges do not file complaints or initiate prosecutions, nevertheless, Plaintiff's allegations against these jurists to this extent are devoid of any factual support that would survive scrutiny under the <u>Iqbal</u> and <u>Twombly</u> heightened pleading standard, *supra*.

the action in which the process issued." <u>Preiser</u>, 352 S.E.2d at 29. Thus, "[a]n action for abuse of process must be brought within one year from the time the right to bring the action accrued." <u>Id</u>., Syl. Pt. 3.

Viewed in the light most favorable to Plaintiff, he has stated that the abuse of process claim began when he was arrested by Defendant Bowers on the morning of February 1, 2018. (See, ECF No. 3 at 11, 23, 24) There is no dispute as to when Plaintiff became aware of the alleged misconduct, as from the moment his charges were filed, it is clear that he began to challenge them. Accordingly, the statute of limitations for his abuse of process claim would have run in February 2019, however, because Plaintiff did not file this action until January 7, 2020, this claim is time-barred.

<u>Plaintiff's Claims Under Full Faith and Credit and Privileges and Immunities Clauses Fail as a Matter of Law:</u>

Plaintiff conflates his claims against all the named Defendants herein for unlawful seizure, false imprisonment and malicious prosecution as a violation of the Full Faith and Credit Clause[25] of the United States Constitution; Plaintiff further alleges that Defendant Bowers, specifically, violated the provisions set forth in the Privileges and Immunities Clause.[26] (ECF No. 3 at 26-27) These claims lack merit. Plaintiff appears to conclusively state that his arrest on traffic violations

---

[25] "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof." U.S. Const., Art. IV, § 1. The Constitution's Full Faith and Credit Clause is implemented by the Federal Full Faith and Credit Statute, 28 U.S.C. § 1738. That statute reads in pertinent part: "Such Acts, records and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken." A federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered. <u>Allen v. McCurry</u>, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980).

[26] Under the Privileges and Immunities Clause, "[t]he Citizens of each State [are] entitled to all Privileges and Immunities of Citizens in the several States." U.S. Const., Art. IV, § 2, cl. 1. The United States Supreme Court has determined that "[t]he object of the Privileges and Immunities Clause is to 'strongly ... constitute the citizens of the United States [as] one people,' by 'plac[ing] the citizens of each State upon the same footing with citizens of other States, so far as the advantages resulting from citizenship in those States are concerned.' " <u>Lunding v. New York Tax Appeals Tribunal</u>, 522 U.S. 287, 296, 118 S.Ct. 766, 139 L.Ed.2d 717 (1998)(internal citations omitted).

somehow implicates these Clauses because Plaintiff believes he has the right to manufacture or fabricate his own licenses for his vehicle. (ECF No. 3 at 12, 26-28)[27] Plaintiff also fails to provide any factual support as to how these Clauses apply to this case. Accordingly, these claims should be dismissed.

Plaintiff's Claims Under Fifth, Eighth, Ninth, and Thirteenth Amendments Fail as a Matter of Law:

Though Plaintiff has stated he was arrested "without thee Miranda warnings given" (ECF No. 3 at 12), there is nothing indicated in his Complaint that suggests that his Fifth Amendment rights were implicated, let alone violated pursuant to Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602 (1966).[28]

Plaintiff's generalized Eighth Amendment claim against all named Defendants herein (See, ECF No. 3 at 29) fails as a matter of law because Eighth Amendment implications do not arise without a conviction and sentence. Graham v. Conner, 490 U.S. 386, 392, n. 6 (1989).); see also, Ingraham v. Wright, 430 U.S. 651, 669-671, 97 S.Ct. 1401, 1411-1412, 51 L.Ed.2d 711 (1977). Indeed, it is the undersigned's understanding that the charges against Plaintiff were dismissed.[29] Accordingly, Plaintiff's claims as they relate to "cruel and unusual punishment" (ECF No. 3 at 4, 16) fail as a matter of law.

---

[27] Plaintiff concedes that the courts of West Virginia and Pennsylvania are separate and distinct, "but they have to treat the work that each other does with respect." (ECF No. 3 at 26) It would appear from this assertion that Plaintiff takes issue with the fact that his "Pennsylvania Traveler" plates he affixed upon his vehicle and his "ID Apostilled by SECRETARY OF STATE OF PENNSYLVANIA" (Id. at 11) were not accepted by West Virginia law enforcement as properly authenticated identification and registration.

[28] There is no indication that Plaintiff was interviewed or examined by law enforcement or that he was denied his right to an attorney during the State criminal proceedings.

[29] On July 18, 2019, the Raleigh County Circuit Court entered an order that dismissed numerous matters that were pending on account that none of them had been presented to a grand jury or had an information filed therein in over a year; Plaintiff's bound over criminal matters, action number 18-B-67-K, West Virginia v. Rayco Lashon Saunders, which includes the charges complained of herein, were included in the mass dismissal. (See attached order)

55

To the extent that Plaintiff has alleged Defendants violated his rights under the Ninth and Thirteenth[30] Amendments (ECF No. 3 at 29), once again, Plaintiff fails to provide any factual support as to how any of the Defendants herein violated same.

<u>Plaintiff's Claim for Intentional Infliction of Emotional Distress Fails as a Matter of Law:</u>

Plaintiff has also charged Defendants White, Dimlich, Peck, Keller, and Parsons with intentional infliction of emotional distress as a result of their "attempted prosecution" of the State criminal case.[31] (ECF No. 3 at 22-23) The required elements of an intentional infliction of emotional distress claim are:

> (1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct; (3) that the actions of the defendant caused the plaintiff to suffer emotional distress; and (4) that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

<u>Brodnik v. Lanham</u>, No. 1:11-cv-178, 2016 WL 4087361, at *12 (S.D.W. Va. Aug. 1, 2016)(quoting <u>Philyaw v. Eastern Associated Coal Corp.</u>, 633 S.E.2d 8, Sy. Pt. 2 (W. Va. 2006)). This Court has previously determined that "[t]o qualify as legally outrageous, a defendant's conduct must be 'more than unreasonable, unkind or unfair; it must truly offend community notions of acceptable conduct.' " <u>Id</u>. Plaintiff does not provide any supporting facts as to how any of these Defendants contributed to Plaintiff's emotional distress, and as noted *supra*, it would be improper for this Court to fashion arguments or theories for *pro se* litigants. See, e.g., <u>Gordon v.</u>

---

[30] <u>Newell v. Davis</u>, 563 F.2d 123 (4th Cir. 1977)("The District Court did not address the claim under the Thirteenth Amendment, perhaps because it was so obviously without merit.").

[31] Toward the end of his Complaint, Plaintiff appears to further allege that all Defendants herein, including the City of Beckley, Raleigh County/County Commission of Raleigh County are also guilty of intentional infliction of emotional distress along with numerous other intentional torts to the extent that the City of Beckley and Raleigh County adopted "customs, practices, and/or polices" that caused Plaintiff's damages. (ECF No. 3 at 29-30) However, as discussed herein, Plaintiff offers nothing that indicates what customs, practices or policies these Defendants relied upon when being "deliberately indifferent to" Plaintiff's constitutional rights. (<u>Id</u>. at 30)

<u>Leeke</u>, 574 F.2d 1147 (4th Cir.1978). Accordingly, Plaintiff's claim for intentional infliction of emotional distress against Defendants fails as a matter of law.

<u>Plaintiff's Garden-Variety Tort Claims Fail as a Matter of Law:</u>

To the extent that Plaintiff has alleged all Defendants herein committed the intentional torts of "assault", "battery", "false imprisonment", "conversion", "intentional infliction of emotional distress", "fraud/deceit", "trespass (to land and property)", and "defamation" (ECF No. 3 at 28-29), it is noted that Plaintiff is required to comply with the general rules of pleading as set forth in Rule 8(a) of the Federal Rules of Civil Procedure. That Rule provides as follows:

(a) Claim for Relief. A pleading that states a claim for relief must contain:

    (1) a short and plain statement of the grounds for the Court's jurisdiction, unless the court already has jurisdiction and the claim needs no jurisdictional support;
    (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and
    (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Plaintiff's Complaint does not comply with Rule 8(a) for failing to allege sufficient facts and circumstances showing entitlement to relief. After having liberally reviewed Plaintiff's Complaint(s), it is clear that Plaintiff only provides "naked assertion[s]" which are verboten pursuant to the jurisprudence espoused under <u>Twombly</u> and <u>Iqbal</u>, *supra*.

On that note, this Court has previously determined that claims that closely resemble this Plaintiff's "bear the hallmarks of 'sovereign citizen' filings and appear to be patently frivolous":

"Sovereign citizen" claims are from individuals who, even though they physically reside in the United States, do not recognize the authority of the federal or state government and, thus, assert that they are not subject to the laws or jurisdiction of those governmental entities. "Sovereign citizens" frequently use such arguments to attempt to evade criminal responsibility, overturn valid convictions and seek release from custody. Because the petitioner's claims appear to rest solely on his arguments grounded in the "sovereign citizen" movement, such claims should be denied as being frivolous. See, e.g., <u>United States v. Schneider</u>, 910 F.2d 1569, 1570 (7th Cir. 1990)(explaining that "sovereign citizen" arguments have "no

conceivable validity in American law"); see also United States v. Benabe, 654 F.3d 753, 767 (7th Cir. 2011)(theories of individual sovereignty, immunity from prosecution and the like have been repeatedly rejected).

Rivera v. Inferior Court of California, No. 2:16-cv-9546, 2016 WL 11270106, at *3, fn.4 (S.D.W. Va. Dec. 16, 2016)(Tinsley, M.J.), *report and recommendation adopted by*, 2017 WL 1377723 (S.D.W. Va. Apr. 13, 2017); see also Patrick of Family of Morgan v. Hughes, No. 1:17-cv-1208, 2017 WL 6993029, at *3 (S.D.W. Va. May 4, 2017)(dismissing "sovereign citizen" claims as "patently frivolous" and threatening plaintiff with sanctions for further filings)(Tinsley, M.J.), *report and recommendation adopted by*, 2018 WL 473018 (S.D.W. Va. Jan. 18, 2018).

## PROPOSAL AND RECOMMENDATION

The undersigned therefore respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **GRANT** the Defendants' motions to dismiss (ECF Nos. 35, 38, 41, 44, 46), **DISMISS** Plaintiff's Complaint (ECF No. 3) **WITH PREJUDICE**, and remove this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Frank W. Volk, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 106 S.Ct. 466, 475, 88 L.E.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88 L.E.2d 933 (1986); Wright v. Collins, 766 F.2d 841 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.E.2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Volk, and this Magistrate Judge.

The Clerk of this Court is directed to file this Proposed Findings and Recommendation and to send a copy of same to the *pro se* Plaintiff and to counsel of record.

ENTER: May 18, 2020.



Omar J. Aboulhosn
United States Magistrate Judge